26301. BURKE *v.* THE STATE.

DECIDED SEPTEMBER 9, 1937. REHEARING DENIED DECEMBER 15, 1937.

*C. E. Anderson,* for plaintiff in error.
*G. C. Dekle Jr., solicitor,* contra.

MACINTYRE, J. Robert Burke was convicted of possessing intoxicating liquor, and his exception is to a judgment overruling his motion for new trial containing the general and three special grounds.

H. A. Brinson, a county policeman, testified that on September 21, 1936, in Jenkins County, Georgia, he found intoxicating liquor hidden in the wall of a room connected by other rooms with the defendant's place of business. The same witness testified, in part, as follows: "To describe how that building is constructed, the main entrance faces the south, and the first room . . is the storeroom where there is beer, candy, sodawater, and so on, and then to the right you enter into a room with a bed in it, and out of that room there is a door into another room, and to the right

there is another room where I found the whisky. In these other rooms . . there are tables and benches and chairs, and some are covered over with cloth like some game to be played there, and there is one bed in the room behind the main entrance. . . The day we were out there Robert Burke, Lonnie Burke, and Eddie Coleman were out there. Lonnie was right about the end of the counter, and Robert was behind the counter before the cash register, and Mr. Coleman was either standing or sitting on one of the stools in front of the counter. . . As to whether I know who handles the key to the room in which the liquor was found by me . . the front door was open, the next door to the bedroom; the door to go into the little room in the back had a hook on it; and the next door I don't know about, but the door going on to the back porch was locked on the outside, with the key in the door. I do not know who usually has possession of that key, because there are three of them down there. . . I did not testify that Eddie Coleman occupies it; he works there. Mr. Lonnie Burke also works there. . . This liquor found at Mr. Robert Burke's place, . . if drunk to excess, would produce intoxication. . ..Robert Burke claims it as his place." There was testimony that liquor was found in the defendant's possession both before and after the date charged in the present accusation, and that he fled after the liquor in question was found. G. C. Humphrey, another policeman, testified, in part: "What Mr. Burke had to say about this case was that he did not like the way we were hanging around his places of business, and . . that he would throw one hundred dollars our way if we would leave him alone during Christmas." After stating to the jury that he subleased "this place," the defendant said, in part: "But the other building—after then we built it ourselves, and by them building it themselves, one of the rooms Lonnie slept in, and the others they rented them out as they pleased, and I told them . . they could have the building for their use, provided they attended to my business, and if they could make any extra money for themselves it was all right with me.. I told them I didn't care what they did so long as they attended to my business, . . and they pitched parties there and did whatever they wanted there, and whatever they made out of it was their own. . . They would rent to a man who wanted to pitch a party, and it was all right, and they would rent the rooms there, and there was one bed in

there, and if a fellow went there he could drink and mess around there if he saw fit, and whatever they got out of the rooms I did not care so long as they attended to my business; that is all I wanted them to do. I knew nothing about the rooms or the whisky. I didn't even know it was in there. I had the building and I had the license. The reason I had the liquor license was to sell wine. . . Mr. Humphrey says I offered him one hundred dollars out there to let me alone during Christmas. I hope I . . die . . if I said anything like that." Our view is that the evidence supported the verdict; and we hold that the court did not err in overruling the general grounds of the motion for new trial.

The testimony of G. C. Humphrey, that liquor was found in the defendant's possession once "since the date mentioned in the accusation," was not subject to the objection that "it referred to a different crime than the one upon which the accusation was based." *Hayes* v. *State*, 36 *Ga. App.* 668 (137 S. E. 860), and cit.; *Burke* v. *State*, 54 *Ga. App.* 225 (187 S. E. 614). In special ground 2 exception is taken to the admission of the following testimony of G. C. Humphrey, over the objection that it was hearsay: "Harlow Brinson did the searching at this place and found the liquor, but I know where it was at. I saw afterwards where it was found at. . . As you walk in the store you turn to the right and go through a shedroom, a bedroom, and then into another room, and inside that it looked like the planks had been nailed up so far [indicating] and left off, and the whisky was in the wall. I did not see the liquor in that place." Another witness testified that he found the liquor—the only intoxicant involved in this case—where Humphrey said it was found, and the liquor itself was introduced in evidence. No witness even intimated that the liquor was not found where the State's witness swore he found it. The defendant's failure to introduce any witness to disprove the finding of the liquor, and his statement that "I didn't even know it was in there," closely amounted to a tacit admission on his part that the liquor was found. Furthermore, the defendant in his statement grounded his defense solely upon the proposition that he "knew nothing about the rooms or the whisky," and did not know it was there. In his brief, counsel for the defendant states that "the State does not show that Robert Burke possessed any liquor, or controlled any liquor, but rests solely on the thin circumstance that Robert Burke owned a business in the

same building where the liquor was found," and that "the evidence shows conclusively that it could have been most anybody's liquor." In these circumstances, we think that the admission of the evidence in question was harmless, and we hold that the court did not commit reversible error in admitting it. In the last ground it is urged that the court committed error in allowing G. C. Humphrey, one of the officers who raided the defendant's place, to testify as follows, over the objection that the evidence "was irrelevant and  . .  had nothing to do with the case on trial":  "At the last term of this court, at which this case was to have been tried, but continued because of illness of Mr. Burke's counsel, Mr. Burke spoke to me in regard to this case. We were sitting in the ante-room on a table. What Mr. Burke had to say about this case was he did not like the way we were hanging around his places of business, and he said that he would throw one hundred dollars our way if we would leave him alone during Christmas." Under all the facts and circumstances, we think that the evidence shows its relevancy, and we hold that it was properly admitted. In conclusion, we hold that for no reason assigned did the court commit error in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J. and Guerry, J., concur.*