PEOPLE v. CLARK.

1. HOMICIDE—FIRST-DEGREE MURDER—INSANITY—EVIDENCE.

The defense of insanity to charge of first-degree murder makes evidence as to the defendant's physical and mental condition at the time of the offense and shortly thereafter of vital importance in the trial of the case, especially where the opinions of the 2 members of the sanity commission disclose they were based upon examination made by them about 6 weeks after crime had been committed (CL 1948, § 750.316).

2. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.

In order to obtain a new trial upon the ground of newly-discovered evidence it should be shown that the evidence, and not merely its materiality, be newly discovered; that the evidence be not cumulative merely; that it be such as to render a different result probable on a retrial of the cause; and that the party could not with reasonable diligence have discovered and produced it at the trial.

3. HOMICIDE—INSANITY—NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.

Newly-discovered evidence, consisting of testimony of newspaper reporter and physician who interviewed defendant on same day she was alleged to have murdered her oldest child, which was direct and material evidence as to her sanity on that date, unknown to defendant at time of trial, not merely cumulative, and such as to make it reasonable to assume a different result might be effected on a retrial of the cause, where insanity was interposed as a defense, required that a new trial be granted (CL 1948, § 750.316).

Appeal from Recorder's Court of Detroit; Krause (Paul E.), J. Submitted April 13, 1961. (Docket No. 67, Calendar No. 48,813.) Decided September 21, 1961.

Constance Helen Clark was convicted of murder in the first degree. Reversed and new trial granted.

REFERENCES FOR POINTS IN HEADNOTES
[1] 26 Am Jur, Homicide § 77 et seq.
[2, 3] 39 Am Jur, New Trial § 158.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, *Samuel Brezner* and *Angelo A. Pentolino,* Assistant Prosecuting Attorneys, for the people.

*Capizzi, Valenti & Kwetcher* (*I. A. Capizzi,* of counsel), for defendant.

KAVANAGH, J. Defendant was convicted by a jury in the recorder's court for the city of Detroit of the first-degree murder* of her oldest child. The defense was insanity.

On June 8, 1957, shortly after 7 a.m., a woman telephoned the Detroit police department stating she had killed her children. Arrest followed and warrant issued charging first-degree murder. Following examination she was bound over for trial. A sanity commission was requested and appointed by the court. On July 18, 1957, the commission filed its written report, the doctors disclosing they had examined the defendant on that date and were of the opinion the defendant was sane and able to stand trial. Following a formal hearing a week later, the court so ordered.

Trial by jury resulted, on November 1, 1957, in a verdict of first-degree murder.

On November 21, 1957, a motion for new trial was filed. This motion was continued from time to time by consent and court order. A supplemental and amended motion for new trial was filed September 25, 1959. To this motion were attached affidavits of Frederic Schultze, a Detroit Times reporter, and Dr. Austin Z. Howard, night superintendent of Receiving hospital of the city of Detroit.

The affidavit of Frederic Schultze sets forth that he was a newspaper reporter for the Detroit Times

---

* See CL 1948, § 750.316 (Stat Ann 1954 Rev § 28.548).—REPORTER.

and that on June 8, 1957, at about 10 p.m., in his capacity as a reporter, he interviewed the defendant in the presence of Dr. Austin Z. Howard, night superintendent of Receiving hospital; that he requested Dr. Howard to be present at the interview because in addition to interviewing her he wished to take her photograph and wanted to be sure of her mental condition before taking the photograph. The affidavit further disclosed that prior to the interview he had information this woman was a registered nurse by profession; that he expected to see a person of reasonably clean and neat appearance; and that he was somewhat shocked and surprised when he first approached her to find she was slovenly and disheveled in appearance. The affidavit also disclosed that he asked her some questions about the killing of her children; that she seemed dazed and bewildered and her answers were incoherent, not responsive and seemed to wander about aimlessly; and that when he asked defendant if she would permit him to take her photograph, she replied, "Why are you interested in me and why do you want my picture; what is all this fuss about?" Mr. Schultze further stated that in his opinion defendant did not realize what had happened and was not aware of the seriousness of what she had done, and he concluded she definitely was not in her right mind; that he then talked with Dr. Howard, who confirmed the opinion about her mental condition. Mr. Schultze left without taking her picture. He further stated that until about 2 weeks before the date of the affidavit, which was subscribed to on the 23d day of September, 1959, he had not discussed the contents of the affidavit with anyone connected directly or indirectly with the defendant.

The affidavit of Dr. Austin Z. Howard stated similar facts with respect to Mr. Schultze approaching him and the fact he accompanied the reporter to

the woman's bedside where Mr. Schultze attempted to question her. Dr. Howard stated that, based upon his observation of defendant at the time, he concluded she definitely did not realize what had happened, that she was mentally unbalanced, and was not in a condition to consent to the taking of her picture. He stated he expressed that opinion to Mr. Schultze and that Schultze agreed and left without taking her picture. He further stated he had not discussed this event with anyone connected with defendant, her attorneys or her parents until approximately a month after her conviction appeared in the newspapers.

These affidavits were attached to and made the basis of a motion for new trial on the theory of newly-discovered evidence. Hearing was had on the motion which was denied by the court.

Defendant appeals alleging various errors, only 1 of which need be discussed, namely, whether the lower court erred in failing to grant a new trial on the grounds of newly-discovered evidence.

The people in their brief argue that the facts offered in the affidavits of Dr. Howard and Frederic Schultze, the Detroit Times reporter, are merely cumulative at best and that it is highly improbable the mere substance of these affidavits would be sufficient to cause a different verdict on another trial.

Defendant's defense of insanity made evidence as to her condition, both physical and mental, at the time of the offense and shortly thereafter, of vital importance in the trial of her case. This is true particularly where the testimony of the 2 members of the sanity commission discloses their opinions were based upon examination held by them approximately 6 weeks after the commission of the alleged crime, when they were merely seeking to determine whether or not defendant was sane so as to be able to assist her counsel in a defense at the trial.

Dr. John L. McBride, a psychologist employed by recorder's court psychopathic clinic, made his examination July 12, 1957, approximately 5–1/2 weeks after the alleged crime.

It is clear that the medical experts who testified had not examined defendant at or near the time of her arrest. Hence, the newly-discovered evidence would not be cumulative but would constitute the only direct evidence as to her sanity on the date of her alleged commission of the crime.

Our Court has on numerous occasions held that to entitle one to a new trial on the ground of newly-discovered evidence, it must be shown that the evidence itself, not merely its materiality, was newly-discovered; that it is not cumulative; that it is such as to render a different result probable on a retrial of the cause; and that the party could not with reasonable diligence have discovered and produced it at the trial. *People* v. *Pizzino,* 313 Mich 97; *People* v. *Paugh,* 324 Mich 108; *People* v. *Fedderson,* 327 Mich 213; *People* v. *Bauman,* 332 Mich 198. In the instant case no one connected with defendant knew anything about the newly-discovered evidence until after the trial was completed.

The evidence was newly-discovered and material, and not merely cumulative, and it is reasonable to assume it might effect a different result on a retrial of the cause. Therefore, the court was in error in refusing to grant the motion for new trial.

The conviction is set aside and a new trial ordered, and the case is remanded for further proceedings.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and SOURIS, JJ., concurred.