PEOPLE *v.* LLOYD.

1. CRIMINAL LAW—EXCLUDED TESTIMONY—CONFESSIONS.

Defendant's contention that the trial court erred in refusing to exclude certain testimony alleged to constitute an admission or confession elicited by the police while defendant was under arrest and without warning of his constitutional rights in prosecution for robbery armed *held*, not well taken, where at conclusion of the remarks objected to, the court held an independent hearing outside the jury's presence and ruled the people's proffered evidence of an admission or confession inadmissible, and there was nothing in the preceding testimony which could reasonably be said to constitute an admission or confession (CLS 1961, § 750.529).

2. SAME—CROSS-EXAMINATION OF DEFENDANT.

Defendant in a criminal case becomes subject to cross-examination just as any other witness does, once he voluntarily takes the witness stand on his own behalf.

3. SAME—POSSESSION OF WEAPON—ARMED ROBBERY—EVIDENCE.

Prosecution's question to defendant in prosecution for robbery armed as to possession of a gun, *held*, not to be improper, where prosecution's proffered evidence of an admission or confession was held inadmissible, since possession of a weapon is a necessary element of the crime of robbery armed (CLS 1961, § 750.529).

---

REFERENCES FOR POINTS IN HEADNOTES

[1]   29 Am Jur 2d, Evidence § 582 *et seq.*
[2]   21 Am Jur 2d, Criminal Law § 358.
[3]   46 Am Jur, Robbery § 4.
[4]   53 Am Jur, Trial § 106.
[5, 6]   58 Am Jur, Witnesses § 554.
[7]   58 Am Jur, Witnesses § 557.
[8]   53 Am Jur, Trial § 34 *et seq.*
[9, 11]   30 Am Jur 2d, Evidence § 1143.
[10]   58 Am Jur, Witnesses § 860.
[12]   46 Am Jur, Robbery § 50 *et seq.*

4. TRIAL—CONTROL OF TRIAL—INTERRUPTIONS BY COURT.

Judge has the right to control and maintain the orderly conduct of the business before the court, and may go to considerable lengths to limit repetition of questions, and may even order counsel to desist from asking questions which the witness has already answered.

5. SAME—WITNESSES.

Witnesses in a judicial proceeding are entitled to respectful consideration and it is the duty of the court to enforce this protection.

6. SAME—CRIMINAL CASE—INTERRUPTIONS BY COURT.

Interruptions by court of counsel during cross-examination of witness in prosecution for crime because counsel was allegedly becoming argumentative *held*, proper, since the judge has the duty to control and maintain the orderly conduct of the business before the court, and witnesses are entitled to respectful consideration.

7. CRIMINAL LAW—QUESTIONING OF WITNESSES BY COURT.

A trial court may question witnesses in the trial of a criminal case in the interest of justice, so long as he does not interpose his personal views.

8. SAME—CROSS-EXAMINATION—CONTROL OF TRIAL.

The trial court has the duty of controlling the conduct of the trial and in exercising this duty he exercises a broad discretion where cross-examination of witness is concerned, hence, in prosecution for robbery armed it was not an abuse of discretion for the court to ask defense counsel to rephrase one question, and to refuse to let a witness answer a question comparing defendant's coat to those worn by spies on television (CLS 1961, § 750.529; CL 1948, § 768.29).

9. SAME—LINEUPS—IDENTIFICATION.

Defendant's claim that it was prejudicial error for the police to place him in a lineup with persons of dissimilar physical characteristics *held*, without merit, since, as lineups are conducted in police stations and consist of persons being held in custody, and the purpose of a lineup is identification, the validity of the identification is a question for the jury, and presents a question as to the weight to be given such identification, not its admissibility.

10. EVIDENCE—CREDIBILITY OF WITNESSES—WEIGHT TO BE GIVEN TESTIMONY.

Credibility of witnesses and the weight to be given their testimony is for the determination of the trier of the facts, since conflict of testimony may well occur.

11. Same—Physical Characteristics—Thick Lips.

References during the course of a criminal prosecution to defendant's thick lips *held,* not to be prejudicial, since the thick lips of the defendant were one of the features which enabled witnesses to identify him, and no objection was made to these references in the trial court.

12. Criminal Law—Robbery Armed—Record.

Conviction of defendant of the crime of robbery armed *held,* proper, where there was sufficient testimony presented by the people, if believed by the jury, to justify a verdict of guilty beyond a reasonable doubt (CLS 1961, § 750.529).

Appeal from Recorder's Court; Ricca (John A.), J. Submitted Division 1 October 7, 1966, at Detroit. (Docket No. 1,306.) Decided January 24, 1967.

Sidney Hayes Lloyd was convicted of robbery armed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Richard J. Padzieski,* Assistant Prosecuting Attorney, for the people.

*Talbot M. Smith,* for defendant.

Holbrook, J. In June 1965, the defendant was tried in the recorder's court for the city of Detroit before a jury and convicted of robbery armed.[1] Asserting 3 errors for review the defendant has appealed to this Court.

The pertinent facts appear to be as follows: The robbery, committed in a grocery store at 7600 Dunedin in the city of Detroit, occurred on November 20, 1964, at approximately 7:45 p.m. Mr. Lloyd McReynolds, the owner of the store, testified that the

[1] CLS 1961, § 750.529 (Stat Ann 1965 Cum Supp § 28.797).

first time he saw the defendant was on the sidewalk in front of the store, where the defendant had asked McReynolds questions regarding the whereabouts of an unidentified person. Almost immediately thereafter, the defendant entered the store for the alleged purpose of getting warm, but instead pulled a gun and then proceeded to take the contents of the cash register. James Shannon, another witness who testified for the people, stated that he saw the defendant running north on Dunedin street immediately after the robbery. At that time, Shannon did not know that a robbery had been committed, but he recognized the defendant as one of the boys who lived in the neighborhood. Shannon did not give the police a description or the name of the person he saw running on the street. McReynolds described the robber as a colored male, 22 years old, 6'2" to 6'3" in height, 165 lbs., skinny, with a mustache, dark complexion, thick lips, and wearing a dark, three-quarter length trench coat, light pants and a light colored do-rag on his head.

The defendant was arrested on the night of November 20, 1964, at approximately 10 p.m., on an unspecified charge, and was released on November 22, 1964. No money was found on his person. The defendant was arrested again on December 25, 1964, for the armed robbery which is the subject matter of this case.

After this second arrest the defendant was placed in a lineup with four other persons and was identified by Mr. McReynolds as the person who had committed the holdup. The lineup consisted entirely of persons of the Negro race, ranging in height from 5'7" to 6'1". Of those present, the defendant was the youngest, tallest and thinnest. In a second showup, conducted on December 27, 1964, there were five persons of the Negro race present and Mr. Shannon

identified the defendant as the person he had seen running on the street the night of the robbery.

The defendant's defense was that he was not present at the scene of the crime when it occurred. Three alibi witnesses, not members of his family, testified that the defendant was with them at the specific time of the crime; however, another alibi witness called by the defendant corroborated the fact that the defendant was with the four of them but not at the time of the offense.

Defendant's first contention is that certain testimony which the trial court refused to exclude constituted an admission or confession elicited by the police while the defendant was under arrest and without warning of his constitutional rights, and that its introduction into evidence was reversible error.

In reviewing the testimony of the defendant on cross-examination, the prosecutor asked the defendant if he ever owned a gun. He indicated by his answers that he did acquire a gun in December after the alleged offense took place. When he was picked up on November 20, 1964, the evening of the offense, a toy gun was found in the automobile in which he was riding. The defendant was asked if the gun that he acquired in December was a toy gun. His reply was in the negative. The prosecutor also questioned the defendant as to whether he had ever given anyone a different answer than that he had acquired a gun in December. To this he replied "no." Then the following questions and answers appear in the record:

"*Q.* (By Mr. Picone) Now, you remember being questioned by this detective about the gun?

"*A.* Yes.

"*Q.* What did you tell him about the gun?

"*A.* I don't remember what I told him about the gun, been so long ago.

"*Q.* What?

"*A.* Been too long, I don't remember what I told him about the gun.

"*Q.* All right, when he was questioning you, had anybody threatened you in any way?

"*The Court.* Just a minute, just a minute. The jury is excused."

At this point in the trial, the jury was excused and the court conducted a *Walker* hearing.[2] The court determined that any admission or confession claimed by the people to be proper was involuntarily given and therefore inadmissible.

There is nothing in the testimony summarized and quoted above, which was admitted prior to the *Walker* hearing, which could reasonably be said to constitute an admission or confession. Since the court below held an independent hearing outside the jury's presence and ruled the people's proffered evidence of an admission or confession inadmissible, we find no ground for reversal on this issue.

Defendant improperly advances the theory that the matter of an admission or confession also encompassed his cross-examination by the prosecuting attorney. As noted before, no confession or admission was introduced in evidence in the presence of the jury.

The defendant voluntarily took the witness stand on his own behalf and it is well settled that once a defendant takes the stand he then becomes subject to cross-examination as any other witness. *People* v. *McCrea* (1942), 303 Mich 213; *Raffel* v. *United States* (1926), 271 US 494 (46 S Ct 566, 70 L ed 1054).

Possession of a weapon is a necessary element of the crime of robbery armed and it cannot be said

---

[2] See *People* v. *Walker (On Rehearing)*, 374 Mich 331.—REPORTER.

that it was improper for the prosecutor to question the defendant as to his possession of a gun.

Defendant claims that he was denied a fair trial because of the following factors or a combination thereof: (a) the conduct of the trial judge, (b) the composition of the two lineups in which the defendant appeared, (c) the prosecutor's references to the "thick lips" of the defendant.

The defendant claims that his right to a fair trial was prejudiced because of frequent interruptions from the bench during cross-examination of the people's identification witnesses. In support of this claim, the defendant points out 16 different instances where the court interrupted with comments. Seven of these comments related to instances where counsel repeatedly asked questions which the witness had already answered. In this situation, a trial court may go to considerable length to limit repetition of questions, and even order counsel to desist, since the judge has the right to control and maintain the orderly conduct of the business before the court. *People* v. *Whitney* (1895), 105 Mich 622. See, also, 2 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 592.

In three instances, the court interrupted counsel because he was becoming argumentative in his cross-examination of the witness. Witnesses in a judicial proceeding are entitled to respectful consideration and it is the duty of the court to enforce this protection. *People* v. *Huff* (1913), 173 Mich 620.

On two occasions, the court asked questions of the witness. This procedure is not objectionable, especially since it was done in the interest of justice and since the judge did not interpose his personal views. *People* v. *Fedderson* (1950), 327 Mich 213.

Finally, the court asked counsel to rephrase a question, whether he was going to enter the showup

line, and refused to let the witness answer a question comparing the defendant's coat to those worn by spies on television. Under CL 1948, § 768.29 (Stat Ann 1954 Rev § 28.1052), the trial court has the duty of controlling the conduct of the trial. In exercising this duty, he exercises a broad discretion where cross-examination of witnesses is concerned. *People* v. *Layman* (1941), 299 Mich 141; *People* v. *Fedderson, supra.* From an examination of the record, it does not appear that this discretion was abused.

The court also stated in the instructions:

"Now, in that connection, I want to say this. The court is charged with the conduct of the trial. He's had to pass on the objections of counsel, he has spoken to counsel in order to maintain a proper decorum in the conduct of the trial and he has also asked some questions of the witnesses or some of the witnesses for the purpose of clarification. Now, in that connection, I want you to know that this court has no opinion whatsoever of the guilt or innocence of this defendant, which he intends to convey to you, members of the jury. Because as I have said before, that responsibility is strictly yours."

The defendant claims prejudice because he was not placed in a lineup with people of similar physical characteristics. In the two lineups in which he appeared, he was the tallest and the thinnest person present.

Lineups are conducted in police stations, and the persons who participate in the lineup are taken from those who are being held in custody. It would be unusual indeed if the police had five persons with similar physical characteristics locked up in the same jail. Moreover, the purpose of a lineup is identification. If the defendant is the tallest man in the lineup, and if he believes that this impairs the validity of the identification, he should see that the

jury is apprised of that fact. This is a question of the weight to be given the lineup identification, not its admissibility. It presents no basis for a new trial.

Such lineups have been approved in the recent case of *Wade* v. *United States* (CA 5, 1966), 358 F2d 557 at p 559. For an interpretation of this case see *People* v. *Camak* (1967), 5 Mich App 655.

During the course of trial, eight references were made to the defendant's thick lips. Six of those instances were from the prosecutor, and of the six, three were during his summation. Of the remaining two, the defendant's lips were mentioned once by his own counsel and once by a police officer on the stand. At no time during the trial did defense counsel object to mention of this particular identifying feature.

The thick lips of the defendant were one of the features which enabled witnesses to identify him, and it is difficult to see how this could have been prejudicial.

We said in *People* v. *Camak, supra,* at p 665 the following:

"It is axiomatic that in the course of a trial, conflict of testimony may very well occur. It is for this reason that the credibility of the witnesses and the weight to be given their testimony is for the determination of the trier of the facts. *People* v. *Szymanski* (1948), 321 Mich 248; *People* v. *Clark* (1954), 340 Mich 411."

We conclude that there was sufficient testimony presented by the people if believed by the jury to justify a verdict of guilty beyond a reasonable doubt.

Affirmed.

LESINSKI, C. J., and J. H. GILLIS, J., concurred.