PEOPLE v. FRY

1. LARCENY—EVIDENCE—POSSESSION OF STOLEN PROPERTY.

The trier of fact may properly infer that one in possession of recently stolen property was the thief.

2. LARCENY—POSSESSION OF RECENTLY STOLEN PROPERTY—EVIDENCE.

Testimony by a witness who claimed ability to recognize a radio that was the subject of a theft that a radio pawned by defendant was the radio in question was sufficient to support a finding that the radio pawned was the stolen radio (MCLA § 750.360).

3. CRIMINAL LAW — CONSTITUTIONAL LAW — SELF-INCRIMINATION — PRIVILEGE — SILENCE — ADMISSIBILITY.

The constitutional privilege against self-incrimination protects an accused person from introduction at trial of evidence that he remained silent or claimed the privilege in the face of an accusation made after he was taken into custody.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2]   29 Am Jur 2d, Evidence § 229.
[3, 4]   29 Am Jur 2d, Evidence §§ 411, 412,

4. CRIMINAL LAW — CONSTITUTIONAL LAW — SELF-INCRIMINATION —
PRIVILEGE — FAILURE OF DEFENDANT TO TESTIFY.

   Testimony by a police officer that defendant did not respond to
   an accusation of theft and comment by the prosecutor on that
   silence during argument to the jury were not grounds for
   reversal of conviction of larceny in a building where the trial
   judge cautioned the jury that no presumption adverse to de-
   fendant arose from the mere fact that he did not offer him-
   self as a witness or respond to the police officer, where no
   objection was made by defense counsel to the prosecutor's
   argument, and where the Court of Appeals concludes that the
   error was harmless beyond a reasonable doubt (MCLA § 750-
   .360).

Appeal from Kent, Claude Vander Ploeg, J. Sub-
mitted Division 3 January 8, 1969, at Grand Rapids.
(Docket No. 5,214.)   Decided April 23, 1969.

Donald Fry was convicted of larceny in a building.
Defendant appeals. Affirmed.

*McShane, Bowie & Anderson,* for defendant.

BEFORE: LEVIN, P. J., and HOLBROOK and DAN-
HOF, JJ.

LEVIN, P. J. The defendant, Donald Fry, appeals
his conviction of larceny in a building. MCLA §
750.360 (Stat Ann 1954 Rev § 28.592). The victim
of the larceny, Alden Smith, testified that he admit
ted to his apartment a person who identified himsel.
as Donald Fry and that, after that person left the
apartment, Smith's radio was missing. Smith was
acquainted with a Donald Fry.

Smith was unable to identify the defendant be-
cause Smith was blind and his hearing was so im-
paired that he was unable to identify the defendant's
voice.

A pawnshop owner testified that the defendant and 2 other persons pawned with him a radio bearing the same model number appearing on a purchase order for Smith's radio. A thumbprint on the pawnshop owner's inventory card for the pawned radio was identified as the defendant's thumbprint. The radio was pawned 2 days after Smith's radio was stolen.

The defendant asserts that the evidence was insufficient to warrant a conviction because there was no evidence showing that he was the person who entered Smith's apartment just before the radio was taken. However, it is well established that the trier of fact may properly infer that one in possession of recently stolen property was the thief. *People* v. *Helcher* (1968), 14 Mich App 386.[1]

A witness who claimed ability to recognize Smith's radio testified that the pawned radio was Smith's radio. This testimony would support a finding that the radio the defendant pawned was the stolen radio. See *Jones* v. *State* (1962), 106 Ga App 614 (127 SE 2d 855).

The people's evidence, if believed by the trier of fact, established that the defendant was in possession of Smith's radio just 2 days after it was taken from his apartment. The fact that such possession may have been shared with 2 other persons, one of whom might have been the thief, does not negate the reasonableness of the permissible inference that the defendant was the thief.

This case differs from *Gablick* v. *People* (1879), 40 Mich 292, relied upon by the defendant. In that case there was no evidence that the defendant had ever had his hands on the stolen property. The

---

[1] See, also, *People* v. *Tutha* (1936), 276 Mich 387, 395; *People* v. *MacCullough* (1937), 281 Mich 15, 27; *People* v. *Williams* (1962), 368 Mich 494, 501.

stolen property was found in Gablick's room months after it was stolen although a search of that room the day before the stolen property was found had failed to disclose the stolen property. It also appeared that other persons had access to the room during the intervening time.

The cases cited by the defendant where the offense charged was burglary are not in point. There is authority that the unexplained possession of recently stolen property, unaccompanied by other facts or circumstances indicating guilt, will not sustain a conviction of breaking and entering even though such possession is some evidence that the possessor is guilty of theft. See *People* v. *McDonald* (1910), 163 Mich 552, 555; *People* v. *McDonald* (1968), 13 Mich App 226, 236. In this case it was not necessary to prove the additional element of breaking and entering and, thus, the question dealt with in the *McDonald Cases* is not here involved.

The defendant asserts that his constitutional right not to incriminate himself[2] was violated by reference during the prosecutor's closing jury argument to the fact that the defendant had chosen to exercise his constitutional right to remain silent. A police officer testified that when he and a fellow police officer advised the defendant that he was charged with stealing Smith's radio they tried to tell him of his constitutional rights "and he said he knew his constitutional rights. We didn't have to tell him that, and he wouldn't tell us anything else." The prosecutor emphasized this testimony during oral argument.[3]

---

[2] The Fifth Amendment as applied to the States through the Fourteenth Amendment and Const 1963, art 1, § 17.

[3] The prosecutor argued: "and what is the reaction of Donald Fry. He was arrested and advised by the officer that he is being charged with stealing the blind man's radio, and the officer started to advise him of his constitutional rights, and his response is to the

The defendant did not take the stand in his own behalf. The trial judge cautioned the jury that, "No presumption adverse to the defendant is to arise from the mere fact that he does not offer himself as a witness and testify in his own behalf, or that he does not respond to the police officer. That is his constitutional right."

Courts generally have held that the constitutional privilege against self-incrimination protects an accused person from introduction at trial of evidence that he remained silent or claimed that privilege in the face of an accusation made after he was taken into custody.[4]

"While, under certain circumstances, the statements of a person in custody may be used in evidence against him, his silence may not." *People v. Gisondi* (1967), 9 Mich App 289, 294.

In *People v. Bigge* (1939), 288 Mich 417, the conviction was reversed because the prosecutor in his opening statement referred to the fact that the defendant had not responded to an accusation made at a conference held some time before the lodging of formal charges against the defendant (p 420):

"There can no such thing as confession of guilt by silence in or out of court. The unanswered allegation by another of the guilt of a defendant is no confession of guilt on the part of the defendant. Defendant, if he heard the statement, was not morally or legally called upon to make denial or suffer his failure to do so to stand as evidence of his guilt.

charge, 'I know all of your constitutional rights, and I am not going to answer any questions about this.' "

[4] *Gillison v. United States* (CA DC, 1968), 399 F2d 586; *State v. Ripa* (1965), 45 NJ 199 (212 A2d 22); *Miranda v. Arizona* (1966), 384 US 436, 468 (86 S Ct 1602, 1625, 16 L Ed 2d 694, 10 ALR3d 974), footnote 37.

That the tacit admission argument is impermissible whether the defendant remains silent in the face of an accusation or voices his claim of privilege, see *People v. Gisondi, supra, State v. Ripa, supra,* and *Gillison v. United States, supra.*

He said nothing, and what was said in his presence by another was inadmissible".

Similarly, see *Templeton* v. *People* (1873), 27 Mich 501.[5]

However, in this case, in contrast to the *Bigge Case*, counsel for the defendant Fry did not voice an objection either to the police officer's testimony or to the prosecutor's argument. See *Koepel* v. *St. Joseph Hospital* (1968), 381 Mich 440.

The defendant should not, in our opinion, be granted a new trial because of the introduction of this testimony or the prosecutor's argument based thereon. In *Chapman* v. *California* (1967), 386 US 18 (87 S Ct 824, 17 L Ed 2d 705), *rehearing denied* 386 US 987 (87 S Ct 1283, 18 L Ed 2d 241), the United States Supreme Court held that adverse comments by the prosecuting attorney regarding the defendant's failure to testify would not necessarily require reversal of a conviction following such comments, and laid down the rule, "that before a federal constitutional error can be held harmless, the court must be able to declare belief that it was harmless beyond a reasonable doubt." We are convinced that the evidence and argument complained of did not contribute to the defendant's conviction, that it was harmless beyond a reasonable doubt and that were we to order a new trial the defendant Fry would again assuredly be convicted.[6]

The defendant's conviction is affirmed.

All concurred.

---

[5] Other Michigan cases discussing the question are *People* v. *Courtney* (1913), 178 Mich 137, 148; *People* v. *Daily* (1914), 178 Mich 354, 363; *People* v. *Fitzgerald* (1918), 204 Mich 365; *People* v. *DeBolt* (1934), 269 Mich 39.

[6] We recognize that in *People* v. *Bigge, supra*, the Court held that the improper comment on defendant's silence was not in that case harmless. We do not understand this to mean that such error can never be harmless. See *Chapman* v. *California, supra*, n 8. On the facts of this case we have concluded, as previously stated, that the error was harmless.