### PEOPLE *v.* HICKS
#### OPINION OF THE COURT

1. INDICTMENT AND INFORMATION—AMENDMENT—ADDITIONAL COUNT —PRELIMINARY EXAMINATION.

> Allowing amendment of a criminal information to add a second count constituted reversible error where the amendment was made immediately before trial, thus depriving defendant of his right to a preliminary examination on the second count and where plaintiff conceded that it was error during argument on appeal.

2. CONSTITUTIONAL LAW.

> The Fifth Amendment privilege against self-incrimination is available to a witness in a state proceeding through the Fourteenth Amendment which secures against state invasion the right of a person to remain silent unless he chooses to speak, and to suffer no penalty for his silence (US Const, Ams 5, 14).

3. CRIMINAL LAW—CONSTITUTIONAL LAW—WITNESSES—DEFENDANT TESTIFYING—CROSS-EXAMINATION.

> Permitting cross-examination of defendant which revealed that defendant had previously exercised his constitutional right to remain silent was error since a jury, composed of laymen, tends to associate the Fifth Amendment privilege with guilt rather than with innocence, thus penalizing a defendant for his silence.

---

#### REFERENCES FOR POINTS IN HEADNOTES

[1] 41 Am Jur 2d, Indictments and Information § 183.
[2] 21 Am Jur 2d, Criminal Law § 353.
[3] 21 Am Jur 2d, Criminal Law § 358.
[4] 29 Am Jur 2d, Criminal Law § 640.
[5] 20 Am Jur 2d, Courts § 225 *et seq.*
[6] 30 Am Jur 2d, Evidence § 1080 *et seq.*

CONCURRING, DISSENTING OPINION

DANHOF, J.

4. CRIMINAL LAW—CONSTITUTIONAL LAW—WITNESSES—TESTIMONY —FAILURE TO OBJECT.

*Permitting police detective to testify that defendant had exercised his right to remain silent before trial did not constitute reversible error where no objection was made to that testimony.*

5. APPEAL AND ERROR—DECISIONAL LAW—CRIMINAL LAW—DEFENDANT TESTIFYING—WAIVER.

*The Court of Appeals, being an intermediate appellate court, is duty-bound to follow a state Supreme Court rule that a defendant waives his right to remain silent by testifying in his own behalf, and whether this rule has been changed by the United States Supreme Court is for the Michigan Supreme Court to decide.*

6. EVIDENCE—SUFFICIENCY—CREDIBILITY—QUESTIONS FOR JURY.

*The credibility and weight to be given testimony is for the jury to decide.*

Appeal from Recorder's Court of Detroit, Geraldine Bledsoe Ford, J. Submitted Division 1 December 9, 1969, at Detroit. (Docket No. 5,665.) Decided March 23, 1970. Leave to appeal granted September 22, 1970. 384 Mich 754.

Marvin Garfield Hicks was convicted of knowingly having a stolen motor vehicle in his possession and of unlawfully driving away a motor vehicle. Defendant appeals. Conviction for knowingly having a stolen vehicle in possession affirmed. Conviction of unlawfully driving away a motor vehicle reversed and remanded for arraignment and new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Ap-

pellate Lawyer, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*Lawrence A. Rattner,* for defendant on appeal.

Before: Lesinski, C. J., and Levin and Danhof, JJ.

Lesinski, C. J. On March 15, 1967, defendant was arraigned on a charge of knowingly having in his possession a stolen motor vehicle, MCLA § 257.254 (Stat Ann 1968 Rev § 9.1954). On March 27, 1967, while represented by assigned counsel, defendant waived preliminary examination. On the day trial commenced in the Recorder's Court of the city of Detroit, the court allowed the prosecution to amend the information to add a count of unlawfully driving away a motor vehicle, MCLA § 750.413 (Stat Ann 1954 Rev § 28.645). On December 8, 1967, the jury found defendant guilty on both counts. Defendant was later sentenced to imprisonment for a period of from 4-1/2 to 10 years on the first count and for a period of from 4-1/2 to 5 years on the second count, sentences to run concurrently.

On appeal defendant alleges that the trial court committed reversible error by allowing the amendment to the information which added the second count, thereby depriving defendant of his right of examination on the second charge. Plaintiff, during oral argument, conceded error on this point. Therefore, the conviction of the defendant on the second count of unlawfully driving away a motor vehicle is reversed and the matter is remanded for arraignment and a new trial.

Defendant also contends the court committed reversible error in allowing testimony regarding defendant's failure to make a statement following

his arrest. Defendant objects to the following testimony by Detective Peter Shaheen on direct examination:

"*Q:* What did you do when you saw Mr. Hicks?

"*A:* I had him sit at a table across from me in one of the interrogation rooms. And my first duty was to hand him a slip which is called a Detroit Police Department Constitutional Rights Certificate of Notification. And I told him to read it and I gave it to him to read.

"*Q:* Did you inform him of all the constitutional rights he had prior to asking him any questions in regard to this case?

"*A:* Yes, I did. And I had him read the statement and I asked him if he understood it thoroughly. Then I had him sign it at 8:20 a.m. And I signed it as a witness to his signature.

"*Q:* Did you inform him he had a right not to say anything about this case?

"*A:* Yes, I did.

"*Q:* Did he say anything to you about this case?

"*A:* No, he did not make a statement at that time."

Defendant did not object to this testimony.

Defendant additionally alleges error occurred when he was cross-examined by the prosecutor regarding Jerry Fields. Defendant's explanation was that he had borrowed the vehicle in question from Fields who claimed that it was his sister-in-law's automobile and she had permitted him to drive it since she was going to be out of town. The following transpired:

"*Q:* Who is 'Jerry'?

"*A:* His name is Gerald Fields. I call him Jerry. A friend of mine.

"*Q:* You ever seen Detective Shaheen before?

"*A:* Yes. I saw him before.

"*Q:* You ever told him about Gerald Fields before?

"*A:* No, I didn't.

"*Q:* Why?

"*Mr. Harper:* I object to that, your Honor.

"*The Court:* Why is that?

"*Mr. Harper:* I think Mr. Shaheen testified he had advised him of his constitutional right and he made no statement at all.

"*The Court:* Yes. I don't understand your objection, though.

"*Mr. Harper:* I feel that to ask him why he didn't is strictly a violation of the right to remain silent.

"*The Court:* He has the privilege of remaining silent. But he is no longer silent, as I understand it.

"*Mr. Harper:* But the officer already testified he told him nothing.

"*The Court:* Absolutely correct. He is on the stand now.

"*Mr. Harper:* Okay.

"*Q: (By Mr. Poehlman)* Why didn't you tell the detective about Mr. Fields?

"*A:* Well, because I got arrested. I told the police officer that arrested me. It was a friend of mine's car. When I talked to him, his attitude led me to believe that what I told him wouldn't do any good at all. So I didn't tell him anything."

The essence of the line of questioning indicated above, which was objected to, when read in context with the prior unobjected to questions herein complained of, is to bring before the jury the fact that defendant exercised his constitutional right to remain silent.

In *People v. McCrea* (1942), 303 Mich 213, 279–286, our Supreme Court held that once a defendant takes the stand he then becomes subject to cross-

examination as any other witness.* This was true even as to cross-examination regarding grand jury testimony, which disclosed that he had stood upon his constitutional rights. The Court in deciding this point, at p 282, noted the comment by Justice Potter on page 465 of his work on Michigan Evidence, that "By being sworn in his own behalf he waives his constitutional privilege against self-incriminating questions material to the case."

This rule of law prevailed in Michigan as the rule to be applied in state cases where the defendant takes the stand to testify in his own behalf. However, as early as 1957 in *Grunewald* v. *United States* (1957), 353 US 391 (77 S Ct 963; 1 L Ed 2d 931), and later in *Stewart* v. *United States* (1961), 366 US 1 (81 S Ct 941; 6 L Ed 2d 84), in cases of Federal prosecution, the Supreme Court ruled that it was improper to allow cross-examination of the defendant so as to reveal that the defendant exercised his Fifth Amendment privileges.

In *Malloy* v. *Hogan* (1964), 378 US 1 (84 S Ct 1489; 12 L Ed 2d 653), the Supreme Court expressly held that the Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against Federal infringement—the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty for such silence.

In *Gruenwald, supra,* the Court in deciding the propriety of allowing the complained of cross-examination, stated as follows at p 421:

"Recent re-examination of the history and meaning of the Fifth Amendment has emphasized anew

---

* See, also, *People* v. *Lloyd* (1967), 5 Mich App 717, in which *People* v. *McCrea* (1942), 303 Mich 213, is quoted. However, in that case our Court found that no confession or admission was introduced in evidence in the presence of the jury. *Lloyd* did not involve the issue presented in this case.

that one of the basic functions of the privilege is to protect *innocent* men." (Emphasis by the court.)

In *Slochower* v. *Board of Higher Education of the City of New York* (1956), 350 US 551 (76 S Ct 637; 100 L Ed 692) the Supreme Court also commented on the Fifth Amendment privilege when the court said at pp 557, 558:

"The privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances."

See, also, *Fowle* v. *United States* (CA 9, 1969), 410 F2d 48, and *People* v. *Fry* (1969), 17 Mich App 229, 232.

In the case before us there can be no question that by allowing cross-examination which shows that defendant exercised his privilege to remain silent he was required to pay a penalty for same. Juries composed of ordinary laymen not trained in the law tend to associate the exercise of the Fifth Amendment privilege with guilt rather than possible innocence and exposure to ambiguous compromising situations. While we cannot affirmatively say that every jury would so react, we cannot speculate that it would not.

While our own Supreme Court has not addressed its attention to this issue since *Malloy* v. *Hogan, supra,* we have no alternative but to find that under the rule of that case which we are obliged to follow, the questioning objected to was improperly allowed and that *People* v. *McCrea, supra,* no longer is controlling on this issue.

Reversed and remanded for a new trial.

Levin, J. Concurred.

Danhof, J. (*concurring* in part, *dissenting* in part). I concur with the majority in setting aside the

conviction of the defendant on the second count of unlawfully driving away a motor vehicle. The plaintiff during oral argument conceded error on the part of the trial court when it, on the day of trial, allowed the second count of unlawfully driving away a motor vehicle to be added to the original charge.

I do not agree, however, that the trial court erred when it allowed testimony, by the police detective, that when the defendant was informed of his right to remain silent—the defendant did not make a statement at that time. During the trial, the defendant made no objection to this testimony and hence no reversible error was committed, *People* v. *Webb* (1968), 13 Mich App 625.

Defendant next alleges error by trial court when it allowed questions to be asked of the defendant, upon cross-examination, as to why he didn't tell the police detective about a friend who defendant claimed loaned him the automobile. Defendant objected to this testimony claiming he had a constitutional right to remain silent. The trial court ruled that the defendant had waived his right to remain silent by taking the stand to testify in his own behalf. That ruling was an expression of the settled law of this state. *People* v. *McCrea* (1942), 303 Mich 213. It may well be true, as the majority states, that since the decision in *Malloy* v. *Hogan* (1964), 378 US 1 (84 S Ct 1489; 12 L Ed 2d 653) *People* v. *McCrea* has been overruled. However, to date the Michigan Supreme Court has not addressed itself to this particular question and *People* v. *McCrea* is still the law. Being an intermediate appellate court I feel duty-bound to follow the rule as stated in *People* v. *McCrea.*

Lastly, defendant claims the verdict was against the great weight of the evidence. The credibility and weight to be given testimony is for the jury to decide.

*People* v. *Morris* (1968), 12 Mich App 411. There was sufficient evidence if believed by the jury to support the verdict of guilty beyond a reasonable doubt. Thus, I would affirm the conviction of the defendant on the charge of knowingly having in his possession a stolen motor vehicle, CLS 1961, § 257.254 (Stat Ann 1968 Rev § 9.1954).