PEOPLE *v.* RUSSELL

Opinion of the Court

1. Witnesses—Impeachment—Inconsistency.

   The prosecution had the right to show an inconsistency and
   to show that defendant's present story had not been told
   before, where defendant, when arrested, told the police that
   an auto cut him off and he intended to make a citizen's
   arrest because the victim's driving was a menace to others
   but at trial defendant said he was trying to arrest for felo-
   nious assault.

2. Constitutional Law—Criminal Law—Silence as an Admission.

   Under constitutional mandate an accused person cannot be
   compelled to be a witness against himself and it is also well
   settled that the doctrine of silence as an admission is con-
   trary to the absolute right of silence (US Const, Am 5;
   Const 1963, art 1, § 17; MCLA § 600.2159).

---

References for Points in Headnotes

[1] 58 Am Jur, Witnesses § 688.
[2] 29 Am Jur 2d, Evidence § 638 *et seq.*
[3, 5, 6] 58 Am Jur, Witnesses §§ 616, 649.
[4] 58 Am Jur, Witnesses § 95.
[5] 29 Am Jur 2d, Evidence § 638 *et seq.*
[7, 8] 53 Am Jur, Trial § 485.
[9] 5 Am Jur 2d, Appeal and Error §§ 624–627.
   53 Am Jur, Trial § 505.
   Counsel's appeal to racial, religious, social, or political preju-
      dices against corporations as ground for new trial or reversal.
      78 ALR 1438.
[10] 53 Am Jur, Witnesses § 3.
[11] 29 Am Jur 2d, Evidence § 785 *et seq.*
   Authentication or verification of photograph as basis for introduc-
      tion in evidence. 9 ALR2d 899.
[12] 21 Am Jur 2d, Criminal Law § 224.
   Conviction on testimony known to prosecution to be perjured as
      denial of due process—federal cases. 3 L Ed 2d 1991.
[13] 39 Am Jur, New Trial § 156 *et seq.*
[14] 58 Am Jur, Witnesses §§ 649, 688.
[15, 16] 29 Am Jur 2d, Evidence § 638 *et seq.*
[16] 58 Am Jur, Witnesses §§ 616, 649.

3. WITNESSES—CROSS-EXAMINATION—CRIMINAL LAW.

A defendant who takes the witness stand in his own behalf is subject to cross-examination.

4. CONSTITUTIONAL LAW—VOLUNTARY TESTIMONY—WAIVER—SELF-INCRIMINATION—WITNESSES—CROSS-EXAMINATION.

There is a waiver of the privilege against self-incrimination as to all other relevant facts, where a voluntary offer of testimony upon any fact is given; to hold otherwise would allow the defendant to fabricate his testimony on the stand without the fear of impeachment under cross-examination.

5. CONSTITUTIONAL LAW—SILENCE—ADMISSION AGAINST INTEREST—WITNESSES—CROSS-EXAMINATION.

Silence in communicating to police officers can no longer be used as an admission against interest; but nothing forbids cross-examination about that silence once the defendant has chosen to testify.

6. WITNESSES—CROSS-EXAMINATION—CRIMINAL LAW.

Defendant's testimony became subject to full and complete cross-examination when he took the stand and asserted his version of the facts on direct examination.

7. CRIMINAL LAW—SUMMATION OF PROSECUTOR—INFERENCE—HOMICIDE.

Comment in prosecutor's summation, that defendant "had murder in his heart and that if his orders were not followed, he was going to shoot, and shoot to kill", was permissible because it concerned an inference that could properly be drawn from lengthy and detailed testimony.

8. CRIMINAL LAW—PROSECUTOR'S COMMENTS—LEGITIMATE INFERENCE.

A prosecuting attorney has a right to draw a legitimate inference from the facts on record.

9. CRIMINAL LAW—TRIAL—PREJUDICIAL STATEMENTS—RACIAL OVERTONES—MISCARRIAGE OF JUSTICE—APPEAL AND ERROR—INSTRUCTIONS TO JURY.

Allegation that the prosecution improperly made statements injecting racial overtones prejudicial to the defendant will be considered on appeal only to prevent a miscarriage of justice, if there was no objection or request for corrective instruction or mistrial at the trial.

10. Criminal Law—Witnesses—Res Gestae—Diligence—Discretion—Appeal and Error.

> The prosecution may be excused from the duty to indorse and call all *res gestae* witnesses, to protect the accused from false accusations, upon a showing of due diligence in the search for such witnesses, and the question of diligence is a matter to be determined by the trial court, subject to being overturned on appeal only for clear error (MCLA § 767.40).

11. Criminal Law—Trial—Prejudicial Evidence—Photograph—Inadvertent Mistake—Appeal and Error.

> Defendant's right to a fair trial was not unduly prejudiced by the introduction into evidence of a photograph showing the car window through which a shot was fired, because it was later developed at the trial that an investigating police officer had changed the position of the window and that the photograph was taken after such alteration, where it does not appear that the prosecution knew that the window had been lifted out of place but rather it appears to have been an inadvertent mistake on the part of the police, which was corrected during the course of trial.

12. Constitutional Law—Criminal Law—Conviction—False Evidence.

> A conviction obtained by the use of false evidence, known by the prosecution to be false, must fall as a violation of due process.

13. Criminal Law—New Trial—Newly-Discovered Evidence.

> To justify granting a new trial on the ground of newly-discovered evidence it must be shown that the evidence itself, not merely its materiality, was newly discovered; that it is not cumulative; that it is such as to render a different result probable upon retrial and that the party could not with reasonable diligence have discovered and produced it at trial.

14. Constitutional Law—Criminal Law—Witnesses—Inconsistent Statement.

> The rule which prevents questioning a defendant on his exercise of his Fifth Amendment right to remain silent does not preclude questioning him regarding a prior inconsistent statement.

15. Constitutional Law—Criminal Law—Evidence—Argument.

> Evidence of or argument based on a defendant's exercise of his right to remain silent when confronted with an accusation is impermissible.

16. Constitutional Law—Criminal Law—Right to Remain Silent.
   *A defendant may not be challenged for exercising his right to
   remain silent in the face of accusation even though he takes
   the stand and thereby subjects himself to cross-examination.*

Appeal from Wayne, Horace W. Gilmore, J. Submitted Division 1 June 3, 1970, at Detroit. (Docket No. 8,645.) Decided October 30, 1970.

Harold LeGrand Russell, Jr., was convicted of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*Sheldon Otis,* for defendant on appeal.

Before: J. H. Gillis, P. J., and Levin and Borradaile,* JJ.

J. H. Gillis, P. J. This is a delayed appeal upon leave granted from an order denying defendant's motion for new trial.

Defendant, Harold LeGrand Russell, Jr., was convicted in a jury trial of second-degree murder,[1] and was sentenced to a prison term of not less than 15 years nor more than 25 years.

---

* Circuit judge, sitting on the Court of Appeals by assignment.
1 MCLA § 750.317 (Stat Ann 1954 Rev § 28.549).

The conviction was of the shooting death of Dr. Wayne Glas on the night of October 2, 1965. At that time, defendant was principally employed as a plant protection officer, and as a part-time employee of a private security agency. He was dressed in a police-type uniform and had a pistol in his possession.

Prior to the shooting, there was a confrontation on Interstate 94, between the defendant and Dr. Glas. From the conflicting testimony, it appears that during the course of this confrontation, which involved flashing headlights, tailgating and several alleged instances of "cutting off", the defendant followed Dr. Glas off the freeway, and found him stopped behind a stalled car. The defendant got out of his car, gun in hand, approached the doctor's car, rapped on the window, and announced that he was a police officer and that the driver was under arrest. Apparently, the doctor backed up his car, then drove forward. As he went by the defendant, the fatal shot was fired. The defendant got back in his car and drove away. He was subsequently arrested when he returned to the scene.

The defendant claims on appeal that the several references made by the prosecutor during the cross-examination of the defendant, of the defendant's silence before trial constitute a violation of his right against self-incrimination, requiring reversal. We disagree.

# I

The defendant, on direct examination, testified that when he approached Dr. Glas's car, he intended to make an arrest because the doctor's driving was "a menace to other people who were using the expressway". On cross-examination, the defendant said he was going to make an arrest for "felonious

assault with a dangerous weapon in the form of an automobile." The prosecution then tried to show that the assault basis for the arrest was a recent fabrication, based on the defendant's apparent sudden apprehension that he could not, as a private citizen, make an arrest for a misdemeanor.

The prosecution started a line of questioning which made reference to the defendant's previous silence on that issue. *Without objection* by defense counsel, the following colloquy occurred:

"*Q*. Right. And to the best of your memory, all you told them was that you were going to report a shooting?

"*A*. Something of this nature, yes, sir.

"*Q*. Let me see if we can't help you remember a little more. Did you *tell* those officers that you were trying to make a citizen's arrest?

"*A*. I believe I did, *yes*, sir.

"*Q*. Does that refresh your recollection?

"*A*. Yes, sir.

"*Q*. What did you tell them you were arresting him for, going to try to arrest him for?

"*A*. I don't recall, specifically.

"*Q*. Your memory isn't very good on that?

"*A*. I said I didn't recall specifically, sir.

"*Q*. All right. Now, let me see if I can help you a little bit. Didn't you, as a matter of fact, *tell* them that an auto had cut you off, and you were trying to make a citizen's arrest?

"*A*. I believe I may have, *yes*, sir.

"*Q*. All right. Now, without relating the conversation, did you talk to any other officers that night after your arrest?

"*A*. Yes, sir.

"*Q*. All right. And did you, at any time prior to yesterday afternoon on the witness stand, ever tell any officer or me that you were arresting, or attempting to arrest, Dr. Glas for felonious assault upon

you with a dangerous weapon, to wit: an automobile?

"*A*. No, sir, I did not.

\*          \*          \*

"*Q*. That (yesterday's testimony) is the first time you mentioned to any police officer, or prosecutor, or anyone other than perhaps a member of your family or your counsel?

"*A*. That is correct sir.

\*          \*          \*

"*Q*. Now, you were given the opportunity, were you not, to talk to an attorney the night of the shooting?

"*A*. Yes, sir.

"*Q*. You were given an opportunity the night of the shooting and the next day to talk to both Detectives Torikian and Cummings?

"*A*. Yes, sir.[2]

"*Q*. And on Monday morning, you were given an opportunity to talk to me?

"*A*. Yes, sir.

\*          \*          \*

"*Q*. And on no occasion prior to yesterday did you ever tell any of us who are in charge of this case for the People that you were trying to make an arrest for felonious assault?

"*A*. No, sir, I did not." (Emphasis supplied.)

It is obvious that these questions were calculated to impeach the defendant's testimony. When arrested, defendant told the police that an auto cut him off and he intended to make a citizen's arrest because the doctor's driving was a menace to others. At trial he said he was trying to arrest for felonious

---

[2] The defendant made three written statements to these detectives regarding the events of October 2, 1965. The trial judge ruled that those statements were inadmissible. Later the trial judge ruled that they could be used to refresh defendant's recollection by asking him to read them outside the presence of the jury, but that the statements could not be used for impeachment purposes.

assault. The prosecution had the right to show such inconsistency, and to show that defendant's present story had not been told before. This is not a case of challenging a defendant for a prior exercise of silence, but rather a challenge based on a prior inconsistent statement.

## II

It is elementary that under constitutional mandate an accused person cannot be compelled to be a witness against himself. US Const, Am 5; Const 1963, art 1, § 17; MCLA § 600.2159 (Stat Ann 1962 Rev § 27A.2159). It is also well settled that the doctrine of silence as an admission is contrary to the absolute right of silence. *Griffin* v. *California* (1965), 380 US 609 (85 S Ct 1229, 14 L Ed 2d 106); *People* v. *Wessel* (1931), 256 Mich 72.

The prosecution concedes all this, but argues that since the defendant voluntarily took the witness stand he waived his right against self-incrimination, hence the fact that defendant never told his present story before trial is not only relevant but admissible.

It is well settled under Michigan case law that a defendant who takes the witness stand in his own behalf is subject to cross-examination. *People* v. *McCrea* (1942), 303 Mich 213; *People* v. *Lloyd* (1967), 5 Mich App 717. But it is argued by the defendant that the scope of this cross-examination must be limited by the principle that there should be no penalty for the previous exercise of the right to remain silent.

While we recognize that there have been cases in support of this proposition,[3] we think the better

[3] *United States* v. *Brinson* (CA 6, 1969), 411 F2d 1057; *United States* v. *Nolan* (CA 10, 1969), 416 F2d 588; *Ester* v. *United States* (Mun App DC, 1969), 253 A2d 537; *People* v. *Hicks* (1970), 22 Mich App 446; *People* v. *Seales* (1969), 16 Mich App 572.

reasoned authority requires a holding in this case that where a voluntary offer of testimony upon any fact is given, there is a waiver of the privilege against self-incrimination as to all other relevant facts. *State* v. *Burt* (1969), 107 NJ Super 390 (258 A2d 711); *Sharp* v. *United States* (CA 5, 1969), 410 F2d 969; *May* v. *State* (Miss, 1968), 211 So 2d 845; *State* v. *Zappia* (1969), 8 Ariz App 549 (448 P2d 119), *cert. den. Zappia* v. *Arizona* (1969), 396 US 861 (90 S Ct 132, 24 L Ed 2d 113). To hold otherwise would allow the defendant to fabricate his testimony on the stand without the fear of impeachment under cross-examination.

Since the decision in *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974), it is clear that silence in communicating to police officers can no longer be used as an admission against interest. But there is nothing in *Miranda* that forbids such cross-examination once the defendant has chosen to testify. As Judge Learned Hand stated in *United States* v. *St. Pierre* (CA 2, 1942), 132 F2d 837, 840:

"It must be conceded that the privilege is to suppress the truth, but that does not mean that it is a privilege to garble it;  *  *  *  it should not furnish one side with what may be false evidence and deprive the other of any means of detecting the imposition."

We conclude that when the defendant took the stand and asserted his version of the facts on direct examination, his testimony became subject to a full and complete cross-examination.

### III

Defendant next condemns the conduct and arguments of the prosecuting attorney and contends that

inflammatory and prejudicial statements were made which require reversal. After a review of the record we are unable to accept this contention.

The defendant points to the prosecutor's summation wherein he states:

"I don't think bad judgment did enter into it. I think when he got out of that car, the intelligent man that he is, he had murder in his heart and that if his orders were not followed, he was going to shoot, and shoot to kill."

It is defendant's contention that by injecting the prosecutor's personal opinion, reversible error was committed. *People* v. *Ignofo* (1946), 315 Mich 626.

We conclude that the comment in question was permissible because it concerned an inference that could properly be drawn from the lengthy and detailed testimony. The rule is clear that a prosecuting attorney has a right to draw such an inference from the facts on record. *People* v. *Morlock* (1925), 233 Mich 284; *People* v. *Badge* (1968), 15 Mich App 29.

Defendant also claims that the prosecutor injected a racial overtone prejudicial to the defendant by saying:

"There may be those who might feel that this man should be convicted because he is a Negro, and killed a white man. And there may be those who feel he should be acquitted because he is a Negro, and that the white man was wrong. But I say to you, ladies and gentlemen, with all the sincerity at my command, that if I thought for one minute that that was an issue in this case, or if I thought for one moment that any of you fine citizens on this jury would decide this case on any such basis, you can rest assured you wouldn't be here, and I pray and hope that that does not enter into this case, because it is not a factor."

The logic by which defendant argues that this statement is racially prejudiced defies restatement; however we can dispose of this argument by noting that no objection to *any* of the prosecutor's statements was made at the trial level, and neither a corrective instruction nor a mistrial was sought. See *Koepel* v. *St. Joseph Hospital* (1968), 381 Mich 440.

In *People* v. *David Smith* (1969), 16 Mich App 198, we said:

"Objections not raised during the trial and passed upon by the trial court will not be heard for the first time on appeal unless a miscarriage of justice would result upon appellate court refusal to consider the question."

We conclude that no miscarriage of justice occurred from the prosecutor's statements.

Defendant's third claim of error centers around the apparent failure of the prosecution to indorse and produce all *res gestae* witnesses pursuant to his statutory obligation.[4]

When Dr. Glas drove off the freeway the defendant found him stopped behind a stalled car. The occupants of that car left the scene shortly after the shooting, and the police officers involved in this case testified that the other witnesses did not get the license number of the stalled car, and were able to give only a very general description of the occupants.

While it is true that the cases of *People* v. *Kayne* (1934), 268 Mich 186, and *People* v. *Dickinson* (1966), 2 Mich App 646, impose a positive duty on the prosecution to indorse and call all *res gestae* witnesses to protect the accused from false accusation, the prosecution may be excused from such duty upon a showing of due diligence in the search for

---

[4] MCLA § 767.40 (Stat Ann 1970 Cum Supp § 28.980).

such witnesses. *People* v. *Kern* (1967), 6 Mich App
406. The question of diligence is a matter to be
determined by the trial court, subject to being over-
turned on appeal only for clear error. *People* v.
*Gibson* (1931), 253 Mich 476; *People* v. *Hunley*
(1946), 313 Mich 688; and *People* v. *Kern, supra.*
We find no such error here.

Defendant in his fourth assignment of error, con-
tends that his right to a fair trial was unduly prej-
udiced by the introduction into evidence of a photo-
graph showing the car window through which the
shot was fired, because it was later developed at
the trial that an investigating police officer had
changed the position of the window.

The photograph showed the window frame lifted
out of line, which would have permitted an inference
that the trajectory of the bullet was such that it
could not have struck Dr. Glas until after a ricochet
from the roof of the car. The prosecution's expert
conceded that the window could have been forced
into its position by the force of the bullet. Defense
counsel contends that he spent much energy devel-
oping his theory that the "accidentally fired bullet"
first struck the roof of the car. Late in the trial,
the investigating officer testified that he had rolled
up the window in his search for evidence, and that
the photograph was taken after such alteration, thus
destroying the theory of a ricochet killing Dr. Glas.

It is established that a conviction obtained by
the use of false evidence, known by the prosecution
to be false, must fall as a violation of due process.
*Mooney* v. *Holohan* (1935), 294 US 103 (55 S Ct
340, 79 L Ed 791, 98 ALR 406). The same result
has been reached where unsolicited false evidence
goes uncorrected. *Alcorta* v. *Texas* (1957) 355 US
28 (78 S Ct 103, 2 L Ed 2d 9); *Napue* v. *Illinois*
(1959), 360 US 264 (79 S Ct 1173, 3 L Ed 2d 1217).

However, in this case, it does not appear that the prosecution knew that the window had been lifted out of place, rather, it appears to have been an inadvertent mistake on the part of the police, *which was corrected during the course of trial.* Consequently, we find no error.

The defendant next contends that newly discovered psychiatric evidence requires that a new trial be held in order for him to raise the defense of insanity.

The facts indicate that prior to trial, the defense of insanity was considered by defense counsel, and the trial court authorized a psychiatric evaluation. During the trial, the defendant did not rely upon such a defense. Apparently, the doctors who originally examined defendant have changed their minds, for we are now asked to grant a new trial based upon revised estimations of the defendant's mental state.

In order to justify granting a new trial on the ground of newly discovered evidence it must be shown that the evidence itself, not merely its materiality, was newly discovered; that it is not cumulative; that it is such as to render a different result probable upon retrial; and that the party could not with reasonable diligence have discovered and produced it at trial. *People* v. *Pizzino* (1945), 313 Mich 97; *People* v. *Paugh* (1949), 324 Mich 108; *People* v. *Bauman* (1952), 332 Mich 198. In the instant case, defendant could have pursued the defense of insanity, based on the original evaluation, and with reasonable diligence, could have produced the evidence which he now labels as "newly discovered". The defendant could have raised the defense of insanity, *had he so elected.* The facts here distinguish this case from *People* v. *Clark* (1961), 363 Mich 643, in which a new trial was

granted because the new evidence could not have been adduced until after the trial was completed. We find no error in denying the motion for new trial.

Affirmed.

BORRADAILE, J., concurred.

LEVIN, J. (*concurring in part and dissenting in part*). I concur in Parts I and III, but not Part II, of the Court's opinion.

As stated in *People* v. *John Willie Williams* (1970), 26 Mich App 218, the rule which prevents questioning a defendant on his exercise of his Fifth Amendment right to remain *silent* does not preclude questioning him regarding a prior inconsistent *statement.* Therefore, and in the light of the defendant's lawyer's failure to object to the questions asked by the prosecutor, I join in Part I of the opinion.

In Part II the Court unnecessarily aligns itself with cases decided in other jurisdictions which reach conclusions contrary to our holdings in *Williams* and in *People* v. *Hicks* (1970), 22 Mich App 446, and *People* v. *Seales* (1969), 16 Mich App 572.

There seems to be complete agreement that evidence of or argument based on a defendant's exercise of his right to remain silent when confronted with an accusation is impermissible. This the majority acknowledges, citing *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974).[1]

The issue which separates my colleagues and me is whether a different rule should obtain when the defendant takes the stand and thereby subjects him-

---

[1] See fn. 37, p 468 of the *Miranda* opinion. See, also, *People* v. *Fry* (1969), 17 Mich App 229, 233 and cases there cited.

self to cross-examination.    In *People* v. *McCrea*
(1942), 303 Mich 213, the Michigan Supreme Court
did so rule, holding that when a defendant takes
the stand he may be questioned about his exercise
of his constitutional right to remain silent.[2]    In
*Hicks,* however, we held, in an opinion authored
by the Chief Judge which I signed and from which
Judge Danhof dissented, that *McCrea* was super-
seded by later decisions of the United States
Supreme Court.

In *Seale,* decided before *Hicks,* and *Williams,*
decided afterwards, we also held that a defendant
who takes the stand may not be challenged for
exercising his right to remain silent in the face of
accusation.    In my opinion *Seale, Hicks* and *Wil-
liams* were correctly decided.    Accordingly, I cannot
join in Part II of the Court's opinion in this case.

---

[2] When questioned as a witness before a grand jury McCrea had
stood upon his constitutional rights and refused to answer on the
ground that his answers might tend to incriminate him.    He tes-
tified at the trial, and on cross-examination he was asked certain
questions he had declined to answer before the grand jury.    The
prosecutor then read from the grand jury proceedings showing
that McCrea had stood upon his constitutional rights.    The Michigan
Supreme Court ruled that the (pp 285, 286) "trial court did not
err in permitting the prosecution to cross-examine McCrea regarding
his grand-jury testimony, which disclosed that he had there stood
upon his constitutional rights and refused to testify".

In *Grunewald* v. *United States* (1957), 353 US 391, 420 (77 S
Ct 963, 1 L Ed 2d 931),    the United States Supreme Court, on
facts seemingly the same as those in *McCrea,* held that a defendant
could not be cross-examined at his trial concerning his exercise
before a grand jury of his constitutional privilege not to be a
witness against himself.