PEOPLE *v.* KREGGER.

1. CRIMINAL LAW—NEW TRIAL—DISCRETION OF COURT—MISCARRIAGE
OF JUSTICE.
Denial of a new trial in a criminal case would not be an abuse
of discretion where sought because of trivial and nonprejudicial
procedural errors that do not result in a miscarriage of justice
(CL 1948, § 769.26).

2. SAME—SELECTION OF JURY—PRESENCE OF DEFENDANT IN COURT-
ROOM.
An accused's presence in the courtroom is not ordinarily neces-
sary during the earlier proceedings relating to the selection of
the jury.

3. SAME—ABSENCE OF DEFENDANT DURING PART OF SELECTION OF
JURY—DUE PROCESS.
Defendant, charged with murder in the first degree, was not sub-
jected to material or substantial prejudice or denied due process
of law because he was not present in court when the first 12

REFERENCES FOR POINTS IN HEADNOTES
[2, 3] 14 Am Jur, Criminal Law § 189 *et seq.*
[2, 3] Taking of steps towards impaneling or selection of jury in
absence of defendant from courtroom as denial of constitu-
tional right. 70 ALR 1072.
[4] 27 Am Jur, Indictments and Informations § 70.
[5] 20 Am Jur, Evidence §§ 453, 570, 571.
[5] Admissibility of inculpatory statements made in presence of
accused and not denied or contradicted by him. 80 ALR
1235; 115 ALR 1510.
[6, 7] 20 Am Jur, Evidence 611, 612; 26 Am Jur, Homicide §§ 385,
405 *et seq.*
[6, 7] Weight and value of dying declarations as evidence. 167
ALR 147.
Crimes against spouse within exception permitting testimony
by one spouse against other in criminal prosecution. 11 ALR
2d 646.
[8] 31 Am Jur, Jury § 113.
[9] 31 Am Jur, Jury § 119.

jurors were called to the box and sworn, where he was rep-
resented by able and experienced counsel who did not object to,
proceeding or insist the jurors be excused and drawing started
anew and jury was accepted without exhaustion of right to
exercise peremptory challenges (US Const, am 14; Mich Const
1908, art 2, § 16; CL 1948, §§ 750.316, 768.3, 769.26).

4. SAME—HOMICIDE—DUE PROCESS—INFORMATION—DATE OF OF-
FENSE.
Defendant, charged with murder in the first degree, was not.
deprived of due process of law because tried and convicted
under an information charging the date of the offense under.
a videlicet without describing the means by which the crime
was committed, and it appears that the victim, defendant's
wife, had been shot by him 8 days before she died, the offense·
being charged as of the date of death (US Const, am 14; Mich,
Const 1908, art 2, § 16; CL 1948, § 750.316).

5. EVIDENCE—HEARSAY—ADMISSIONS.
Testimony as to statements made by defendant's wife, the victim
of his alleged murder, on day she was shot and second day
thereafter, made in the presence of defendant, was properly
admitted under instructions that if he did not hear the state-
ments he would not have been in position to object to them or
make reply but that if he heard them and raised no question
as to their accuracy, his silence might be considered by the
jury as an admission they were correct.

6. SAME—DYING DECLARATIONS—IN EXTREMIS.
Statements made by victim of shooting on day she was shot and
second day' thereafter were not admissible as dying declara-
tions in prosecution of her husband for murder in the first
degree, where there is no showing that the victim considered
herself *in extremis* at time the statements were made (CL
1948, § 750.316).

7. HOMICIDE—DYING DECLARATIONS—CORROBORATION.
Admission in evidence of statements of victim of shooting as
dying declarations was not reversible error in prosecution for
murder in the first degree, where such statements were but
corroborative of other properly admitted evidence (CL 1948,
§ 750.316).

8. CRIMINAL LAW—PEREMPTORY CHALLENGES—PROSECUTING ATTOR-
NEY.
A prosecuting attorney is entitled to continue with his peremptory
challenges until he has exercised 15 or until both sides decline
to exercise the right and his failure to exercise such right

when opportunity is presented does not constitute a waiver of such right (CL 1948, § 768.13).

9. SAME—JURY OF 13.
　　Claim of error in method of selecting thirteenth juror in trial of charge of murder in the first degree *held,* without merit, where such juror was called, examined and all 13 were sworn to try the cause, and no objection was then raised by defendant (CL 1948, § 750.316).

Appeal from Branch; Arch (Charles O.), J., presiding. Submitted October 16, 1952. (Docket No. 93, Calendar No. 45,197.) Decided January 5, 1953.

Stanley Kregger was convicted of murder in the first degree. Affirmed.

*Roy H. Hagerman, Caleb F. Enix* and *Harold J. Ashdown,* for appellant.

*Frank G. Millard,* Attorney General, *Harold F. Bristol,* Prosecuting Attorney, and *Jack R. Sutherland,* Assistant Prosecuting Attorney, for the people.

CARR, J.   Defendant was prosecuted in the circuit court of Branch county for the felonious killing of his wife. The jury returned a verdict of guilty of murder in the first degree and the sentence required by statute was imposed. CL 1948, § 750.316 (Stat Ann § 28.548). A motion for a new trial was made and denied. Defendant has appealed, claiming that errors committed in the course of the proceedings in the trial court were of such character as to require a reversal of the conviction and judgment and the granting of a new trial.

The trial of the case began on the 19th of September, 1950. Following the convening of court the trial judge inquired if the parties were ready. Receiving affirmative answers, he then directed the

clerk to proceed with the drawing of a jury. The
names of 12 jurors were called. They took their
places in the jury box and were duly sworn to make
true answers to questions touching their qualifica-
tions to serve as jurors on the trial. The judge
then read the information, which had previously been
read to defendant at the time of his arraignment.
Inquiry was then made by the judge to ascertain
if the defendant was in the courtroom. It being
found that he was not present, it was ordered that
he be brought immediately before the bar of the
court, and no further proceedings were had until
compliance with such direction. The trial judge
then proceeded to explain to the jury the nature of
the case before them for trial, and to conduct an
examination of individual jurors for the purpose of
ascertaining any disqualifications that might exist.
Counsel on both sides were also permitted to inquire
and to exercise challenges for cause and also peremp-
tory challenges.

A jury was finally selected without either side
having exercised the full number of peremptory
challenges permitted by statute, only 1 of the first
12 jurors called being retained. No objection was
made in defendant's behalf to proceeding after he
was brought into the courtroom, nor was there any
request that the 12 jurors in the box should be
excused and the task of drawing a jury started
anew. Following the conviction, a motion was made
and granted to amend the court journal in such
manner as to show the absence of defendant from
the courtroom when the first 12 jurors were drawn
and sworn. The motion for a new trial assigned
as one of the grounds thereof that defendant was
not present at the time the first jurors were called
and sworn to make true answers as to their qualifica-
tions. It was asserted in substance that defendant's

rights under CL 1948, § 768.3 (Stat Ann § 28.1026) had been violated. Said section reads as follows:

"No person indicted for a felony shall be tried unless personally present during the trial; persons indicted or complained against for misdemeanors may, at their own request, through an attorney, duly authorized for that purpose, by leave of the court, be put on trial in their absence."

On appeal it is urged on behalf of defendant that he was deprived of his statutory and constitutional rights because of the action taken prior to his being brought into court. It is insisted that the drawing and swearing of the 12 jurors was a part of the trial, that defendant was wrongfully deprived of the right expressly recognized by the statute quoted, and that as a further consequence there was a lack in the proceeding of due process of law guaranteed by State and Federal Constitutions.* It is the position of counsel for the people that what occurred in the courtroom prior to defendant's entrance was wholly of a preliminary nature, and that defendant was not in any way prejudiced thereby.

Our attention is not called to any prior decision of this Court involving facts of the precise nature presented here. Analogous questions, however, have been raised and determined. In *People* v. *Raider*, 256 Mich 131, an officer who accompanied the jury when viewing the premises where the crime was allegedly committed pointed out to the jurors the location of certain scales that had been mentioned in the testimony of witnesses on the trial. The claim that this was done in the absence of the defendant was disputed. The trial court did not determine the fact but held that there was no reversible error because the matter was trivial. On appeal this Court sustained the action of the trial judge in

---

* US Const, am 14; Mich Const 1908, art 2, § 16.—REPORTER.

denying a motion for a new trial on the basis of the claimed error, saying in part:

"But as the testimony regarding the scales came in only by way of impeachment of a witness, was not an important factor in the case, and it is apparent the incident was not prejudicial to defendant (CL 1929, § 17354; 16 CJ, p 1162), defendant's counsel was a witness to it and made no objection before verdict (16 CJ, p 1123; *People* v. *Johnson*, 110 NY 134 [17 NE 684]; *State* v. *High*, 116 La 79 [40 So 538]), and evidently did not consider it of sufficient importance to call it to the attention of the court (*People* v. *Kasem*, 230 Mich 278), refusal of the court to grant a new trial upon this basis was not an abuse of discretion." (p 138.)

It may be noted in passing that the statute, above cited (CL 1929, § 17354), is CL 1948, § 769.26 (Stat Ann § 28.1096). The purpose of the enactment of said section was undoubtedly to obviate the necessity of a new trial in a criminal case in which no miscarriage of justice resulted from a procedural error. As further illustrating the proposition that a conviction should not be set aside because of trivial and nonprejudicial errors, see *People* v. *Hahn*, 214 Mich 419; *People* v. *Budd*, 279 Mich 110. In 23 CJS, p 305, the following statement is made:

"Where substantial rights are not thereby affected, accused's presence is not ordinarily necessary during earlier proceedings relating to the selection of the jury."

Decisions from other jurisdictions sustaining such proposition include *People* v. *Johnston*, 140 Cal App 729 (35 P2d 1074). There jurors were called before the defendants were brought into the courtroom, and it was contended on appeal that such action deprived them of due process of law. In rejecting the argument the court referred to *Hopt* v. *Utah*, 110 US

574 (4 S Ct 202, 28 L ed 262), in which it was held
that the absence of the defendant while challenges
to certain jurors were being tried deprived him of
his right to be present during the trial as guaranteed
by a statute of the jurisdiction (the Territory of
Utah) and was in consequence reversible error.
Holding that the "substantial rights" of the defend-
ants in the case before it were not prejudiced by
what occurred, the California court said in part:

"Here the acts of the clerk in swearing the jurors
to answer questions touching their qualifications and
calling the names of 3 jurors were ministerial acts
in no way affecting the substantial rights of defend-
ants. The opportunity was expressly afforded them
by the court, while they were personally present to
have the clerk repeat these formal acts, and defense
counsel then declared, 'he don't need to go back.' The
inchoate objection which counsel started to interpose
relating to the drawing of names until a full panel
was present or their absence explained could not be
considered as an objection for any purpose, and
was properly disregarded by the court. No objec-
tion of that import was made when defendants were
in court. The attention of the trial judge was not
directed to any invasion of defendants' rights which
counsel was thus attempting to safeguard. On
appeal it is not urged that defendants had exhausted
all of their peremptory challenges or that they inter-
posed a challenge for cause to any juror thus called
or selected and that such challenge had been dis-
allowed."

Under the facts in the case at bar it must be
said that there was no material or substantial prej-
udice resulting to defendant because he was not
present in court when the first 12 jurors were called
to the box and sworn. At the time his counsel,
who were able and experienced attorneys, did not
consider that their duty to their client required
them to make an objection to proceeding, or to insist

that the jurors in the box be excused, their names returned to the clerk's box, and the drawing started anew. It is significant that the jury was accepted although defendant's right to exercise peremptory challenges had not been exhausted. We are not in accord with appellant's claim that his conviction and sentence should now be set aside on the theory that there was a substantial invasion of his statutory or constitutional rights.

At the conclusion of the opening statement of the prosecuting attorney, following the selection of a jury, counsel for defendant moved to quash the information and dismiss the case, or, in the alternative, to confine the people's evidence to the date alleged in the information, February 6, 1950. The motion was denied, and appellant assigns error thereon. Presumably the statement of the prosecutor disclosed that testimony would be offered by the people for the purpose of showing that defendant shot his wife on January 29th, and that her death occurred on February 6th following. The information alleged the offense as committed "to-wit: On the 6th day of February, A. D., 1950, at the city of Coldwater in the county of Branch." It charged that defendant "feloniously, wilfully and of his malice aforethought, did kill and murder one Anna Kregger." It is claimed in appellant's behalf that the information was not sufficient to fairly and reasonably apprise him of the offense charged. Such claim is not tenable. It was not necessary to describe the means by which the crime was committed. There is no showing that a bill of particulars was requested. The date of the offense was charged under a videlicet. Defendant was not denied due process of law because tried and convicted under the information filed.

It appears from the record that defendant shot his wife on the 29th of January, 1950, in their home

in Bethel township, Branch county, and that such act followed an argument between them. After the occurrence Mrs. Kregger was removed to a hospital, and defendant was placed under arrest. A statement was taken from him which was subsequently offered in evidence on the trial and received without objection. On the day of the shooting Mrs. Kregger was also questioned at the hospital by the prosecuting attorney with reference to what had occurred. A deputy sheriff who was present at the time was offered as a witness by the people and testified, over objection, that he and the defendant were together at the bedside of Mrs. Kregger, that the latter said that there had been an argument over a cow, that the parties had had previous trouble, and that defendant had pointed a gun at her. Other witnesses who were present at the interview also testified as to Mrs. Kregger's statements, their testimony being in substantial accord with that of the deputy sheriff.

Further testimony was offered as to statements made by Mrs. Kregger on January 31, 1950, when she was again interviewed at the hospital by the prosecuting attorney. Stenographic notes of the conversation were made, and the stenographer taking such notes made a transcript thereof which was offered in evidence. It was objected to on the ground that it was hearsay and that no proper foundation had been laid. The witness expressed the opinion that defendant was within hearing distance, and stated that at the beginning of the interview between the prosecutor and Mrs. Kregger an answer that the latter gave to a question, which the stenographer did not hear, was repeated by defendant. The transcript of the interview was admitted, the witness further testifying that defendant made no objection to any answers by his wife. In said statement Mrs. Kregger claimed that on a previous occasion defendant had pointed the gun at her, that only 1 shot

was fired at the time she received the wound on January 29, 1950, that defendant was serious at the time, and that he said to her "You and I are going together." Other witnesses testified as to what occurred in the room at the time the statement was taken on January 31st.

It is the claim of the appellant that the testimony as to Mrs. Kregger's statements, and the transcript prepared from her notes by the stenographer present on January 31st, should not have been received. It is argued that what Mrs. Kregger said was not admissible as dying declarations, and that the proofs in the case were insufficient to establish that defendant actually heard her answers to the questions propounded by the prosecutor at the interviews in the hospital. It was his claim that his hearing was defective, and he denied understanding the statements made by his wife. The issue in this respect was submitted to the jury by the trial judge who charged in substance that if defendant did not hear the statements he would not have been in position to object to them or make reply. If defendant heard his wife's answers and raised no question as to their accuracy, his silence might properly have been considered by the jury as an admission on his part that such statements were correct. We think that the testimony was properly admitted on such theory, and that the factual issues involved were correctly submitted to the jury. However, whether the jury found that defendant heard the statements and that his failure under the circumstances to make denial of their truth constituted an admission on his part is a matter of conjecture.

At the time the objection to the testimony in question was made the prosecutor indicated that he was offering the proof on the theory that defendant's silence amounted to an admission on his part, further stating that he might be able to make the

testimony competent on the theory that what Mrs. Kregger said amounted to dying declarations. However, the record before us does not justify a conclusion that at the time of the interviews in question Mrs. Kregger believed that her death was impending. There is no showing that she considered herself *in extremis*. The conclusion cannot be avoided that the testimony was inadmissible on the theory that her answers to the questions asked her were dying declarations. *People* v. *Johnson*, 334 Mich 169. In his charge to the jury the trial judge made reference to the testimony relating to the statements made by Mrs. Kregger, saying in substance that if the jury found that such statements were made understandingly and in the belief or consciousness of imminent death they might be considered as dying declarations and given such weight as the jury considered proper. Under the record such charge was erroneous. The jury was not entitled to consider the statements of Mrs. Kregger on the theory indicated. Obviously it may not be said that they did not do so.

Assuming that the jury improperly considered Mrs. Kregger's statements on the theory that they were dying declarations, was defendant thereby prejudiced in such manner as to require a setting aside of the verdict and sentence? In the consideration of this question we are confronted by an unusual situation. As before noted, a statement was taken from defendant on the day of his arrest relating to the trouble between him and his wife at the time of, and prior to, the inflicting of the lethal wound. The official court reporter of Branch county took such statement in shorthand and made a transcript from his notes, which was offered and received in evidence without objection. In substance defendant stated therein that on the morning of January 29th while he and his wife were doing chores they had an argument with reference to the sale of cows,

that following such occurrence they both went to the house, that he obtained a loaded shotgun from a closet in his bedroom, that he carried it into the kitchen where Mrs. Kregger was working, that he pointed it in her direction and told her that they were both going together. He stated that the gun went off, that his wife was wounded, and that he helped her to a chair and then into her bedroom, disregarding for an hour her request to call a doctor. He admitted that some 2 weeks previous to the shooting he had pointed the gun at Mrs. Kregger and had threatened to kill her, saying further that he was then bluffing and that the bluff had worked. It was his claim that he did not intend to shoot his wife, that the gun was faulty, and that because of the defect in his hearing he did not hear the statements taken on the same day at the hospital from Mrs. Kregger. He admitted in the statement that he and his wife "did not get along."

A comparison between the statements made by defendant following his arrest and the statements of Mrs. Kregger, which, it is claimed, were erroneously admitted in evidence, discloses substantial agreement as to what occurred at the time of the shooting and as to defendant's conduct prior thereto. Defendant was a witness in his own behalf on the trial, but his testimony has not been included in the record transmitted to this Court. No claim is made that such testimony was at variance with the statement given by him to the prosecuting attorney on the day of his arrest. We may not assume that he undertook to deny, modify or explain such statement, which was before the jury and which the jury was entitled to believe.

In *People* v. *Gregory,* 130 Mich 522, defendant was prosecuted for, and convicted of, the crime of burglary of a store. Certain silk goods taken from the store at the time of the commission of the offense

were found in a room claimed by the prosecution to have been occupied by defendant and his wife in the city of Jackson. Error was assigned on the admission of testimony as to statements made by defendant's wife to an officer. In holding that such alleged error did not require reversal under the facts involved, it was said:

"It is next urged that the court erred in permitting an officer to testify that the wife of the defendant, at the time the room was searched, stated that the room and the bed in which the goods were found were hers, and in admitting in evidence the goods found, done up in cretonne, and hid in the bed upon which she was then lying. It was openly proved by other testimony that this was her room, that her husband occupied it with her, and that many of his letters were found there. Even if this testimony had been excluded, no doubt could have existed in the mind of the jury that this was Mrs. Gregory's room, and was occupied by her and her husband. The point is without merit."

Of like import is *People* v. *Adams,* 162 Mich 371, in which it was contended that certain testimony was improperly admitted because based on hearsay. In affirming the conviction, it was held:

"Hearsay evidence is harmless where the same facts are shown by competent proof." (Syllabus 8.)

In 24 CJS, p 987, it is said that the admission of hearsay evidence is not prejudicial if it "was admitted, or not disputed, by accused, or was established by other evidence which was competent." In *Young* v. *State,* 206 Ark xix (memorandum of affirmance) (176 SW2d 151), the defendant was charged with homicide and convicted by the jury of the crime of manslaughter. On the trial a witness for the State was permitted to testify over the objection of the defendant that the deceased, 3 days after his injury,

stated, defendant not being present, that defendant and his brother had assaulted him. In declining to hold that the admission of the testimony was reversible error, it was said:

"We think it could not possibly have been harmful to appellant or prejudicial, as he frankly admitted that he did the killing. Whether his brother was present or not, at the assault of Neno, could make no difference, since appellant says he alone was present and sought to evade responsibility on the plea of self-defense, which the jury did not accept."

A similar question arose in *State* v. *Brodock,* 53 Mont 463 (164 P 658). The defendant was convicted of the crime of larceny of cattle. He was jointly charged with one Ducolon, but was granted a separate trial. A material issue in the case involved the ownership of the animals claimed to have been stolen. Ducolon told the sheriff of the county that defendant had claimed to be the owner. The situation and the conclusion of the court thereon are fairly indicated in the following excerpt from the opinion:

"At the time of his arrest the defendant not being present, Ducolon made statements to the witness Nagues, the sheriff, in answer to questions by him, to the effect that the defendant claimed the ownership of the animals. Nagues was permitted, over defendant's objection, to rehearse these statements to the jury. It is contended that this evidence was incompetent on the ground that it was hearsay, and that defendant was prejudiced by its admission. The ruling was erroneous, because the evidence was clearly hearsay. But its admission was not prejudicial, for the reason that, as already stated, the defense was that defendant was the owner of the animals, and that he undertook to establish this claim by his own testimony and that of his other witnesses. The ruling was thus rendered harmless."

In *Halfrich* v. *State,* 122 Fla 375 (165 So. 285), a homicide case, a witness for the people was permitted to testify that another person, who was also a witness, came to him while the alleged offense was being committed, told him that defendant was killing a man and his wife, and asked him to interfere. Objection to such testimony was made by counsel for the defendant. In declining to hold that there was reversible error, it was said:

"Considering all the circumstances, we must hold that the alleged statement of Ruth Ferrell to Biggs was not a part of the *res gestae,* because, if made at all, it was not made at the scene of the homicide, nor in the sight of, nor in the hearing of, either the accused or the victim of the assault. It does not appear to have been a spontaneous statement, but, if made at all, it was a statement made after reflection and for the purpose of procuring assistance in preventing the occurrence of the homicide, which the record shows was then taking place outside of the range of vision or hearing either of the speaker or the person spoken to.

"We hold, however, that the admission of this evidence did not constitute reversible error because the record shows that there was nothing in that testimony which could prejudice the defendant in view of all the facts and circumstances properly admitted in evidence. That Miss Ferrell told Mr. Biggs that the defendant was killing that man and his wife added nothing to the strength of the State's case and took nothing from defendant's case. According to defendant's testimony, that was exactly what he was doing at the time the statement was made by Miss Ferrell and the fact that Miss Ferrell said at that time to a third party that he, the defendant, was doing that could not possibly be of any consequence or in any way prejudice the defendant.'

Other decisions in accord with the foregoing are: *Holliman* v. *State,* 42 Ga App 322 (155 SE 906);

*Long* v. *State,* 192 Ark 1089 (97 SW2d 67); *State* v. *Cupit,* 189 La 509 (179 So 837); *Kimbrall* v. *State,* 178 Miss 701 (174 So 47); *Burke* v. *State,* 56 Ga App 798 (194 SE 242); *People* v. *Dasey,* 75 Cal App 439 (242 P 876).

Assuming in the case at bar that the jury considered the statements by Mrs. Kregger as dying declarations, it does not follow that the error in submitting them on such theory requires a setting aside of the conviction and sentence. The material facts stated by her were conceded by defendant in his statement to the prosecuting attorney following his arrest. In practical effect, each corroborated the other. Under such circumstances, the matters stated by Mrs. Kregger having been established by the admissions of the defendant in a statement introduced in evidence without objection, his claim that such prejudice resulted as justifies and requires the granting of a new trial is without merit.

In selecting a jury the prosecuting attorney and counsel for defendant exercised their peremptory challenges alternately. In some instances the prosecutor passed, defense counsel thereafter, following each such instance, excusing a juror. After the prosecuting attorney had had 15 opportunities to challenge peremptorily, counsel for defendant objected to further peremptories on his part on the ground that each "pass" constituted a waiver of a peremptory challenge. The trial judge overruled the objection and allowed further challenges on behalf of the people. It is contended that such procedure was erroneous. Apparently the question has not been passed on squarely by this Court. Under the language of the pertinent statute (CL 1948, § 768.13 [Stat Ann § 28.1036]), the ruling of the trial court was correct. The prosecutor was entitled to continue with his challenges until he had exercised 15 or until both sides declined to exercise the right.

Before final selection of the jury, the trial judge came to the conclusion that it would be well to impanel a jury of 13. Accordingly he directed the clerk, there being 12 jurors in the box at the time, to call another juror. This was done, the juror examined, and the 13 thus selected were sworn to try the cause. No objection to the method of selecting the thirteenth juror was made at the time on behalf of defendant. His claim on appeal that error was thereby committed is without merit. In accordance with the usual practice, immediately before submission of the case to the jury one juror was withdrawn and the issues were determined by the remaining 12.

We find no reversible error, and the conviction and sentence are affirmed.

Dethmers, C. J., and Adams, Butzel, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred.