PEOPLE *v.* McCOLOR

OPINION OF THE COURT

1. CRIMINAL LAW—APPEAL AND ERROR—PRESERVING QUESTION.
    Failure to object at trial to the prosecuting attorney's alleged
    improper cross-examination, to the prosecutor's alleged prej-
    udicial argument in summation to the jury, and to alleged
    error in jury instructions precluded the defendant from appel-
    late relief where no clear injustice was shown.

DISSENT BY LEVIN, P. J.

2. CRIMINAL LAW—PRIVILEGE AGAINST SELF-INCRIMINATION—SILENCE
    —DEFENDANT TESTIFYING.
    *A defendant who takes the stand may not be asked on cross-
    examination why he did not tell the police at the time of his
    arrest the story he related at trial.*

3. CRIMINAL LAW—PRIVILEGE AGAINST SELF-INCRIMINATION—SILENCE
    AT ARREST—PROSECUTOR'S COMMENT—APPEAL AND ERROR—PRE-
    SERVING QUESTION.
    *Defense counsel's failure to object to the prosecutor's asking the
    defendant at trial why he did not tell the police at the time
    of his arrest the same story he told at trial does not necessarily
    preclude defendant from raising that issue on appeal.*

4. CRIMINAL LAW—PRIVILEGE AGAINST SELF-INCRIMINATION—SILENCE
    AT ARREST—PROSECUTOR'S COMMENT—REVERSIBLE ERROR.
    *Prosecutor's asking the defendant why he had not told the police
    when he was arrested the version of the facts which defendant*

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Evidence § 553.
[2–4] 29 Am Jur 2d, Evidence § 640.
[5–7] 53 Am Jur, Trial § 486.
[8] 53 Am Jur, Trial § 506.
[9] 53 Am Jur, Trial § 485.
[10] 53 Am Jur, Trial § 480 *et seq.*
[11] 53 Am Jur, Trial § 803.

*gave on direct examination was not harmless error where the issue of guilt depended on the jury's assessment of the credibility of the defendant and the complainant.*

5. CRIMINAL LAW—DEFENDANT'S GUILT—PROSECUTOR'S BELIEF.

*Prosecutor's statement in closing argument that from the evidence, he believed defendant was properly charged and that defendant was guilty violated the rule which precludes a prosecutor from expressing a personal opinion concerning the guilt of the accused.*

6. CRIMINAL LAW—PROSECUTOR'S COMMENTS—IMPROPER ARGUMENT.

*Prosecutor's suggesting, during closing argument, that the jury should show its "sincerity" by convicting the defendant was improper.*

7. CRIMINAL LAW—PROSECUTOR'S COMMENT.

*Prosecutor's suggestion in summation to the jury that defendant was a member of the criminal class was improper.*

8. TRIAL—TRIAL COURT'S DUTY—INTEMPERATE LANGUAGE.

*A trial court has the duty to check and control any intemperance of zeal or language that is not warranted by the facts and circumstances shown by the proofs.*

9. CRIMINAL LAW—PROSECUTOR'S MISCONDUCT—IRRELEVANT ISSUES— INNUENDO.

*A prosecutor should stick to the pertinent facts and should not try to convict a defendant through innuendo and character assassination by the introduction of extraneous side issues.*

10. CRIMINAL LAW—PROSECUTOR'S COMMENT—CROSS-EXAMINATION.

*Prosecutor's asking the defendant's father and the defendant's wife, who were not present when the defendant shot complainant and who had no personal knowledge of the facts surrounding the shooting, whether they would shoot the prosecutor in the back and whether they believed it to be wrong to shoot anyone in the back was improper, because the issue in defendant's trial was whether the defendant acted properly at the scene of the assault: whether the defendant assaulted the complainant or whether the complainant assaulted the defendant, and whether the defendant acted feloniously or criminally in the matter.*

11. CRIMINAL LAW—INSTRUCTIONS TO JURY—PUNISHMENT—EMPHASIS.

*A supplemental instruction to the jury, in a trial for assault*

*with intent to do great bodily harm less than murder, in which the judge listed the various grades of assault in descending order, said that he could not mention punishment, and twice stated that assault and battery is a misdemeanor, given in response to a question about the difference between assault and battery and felonious assault, emphasized unduly that felonious assault is a lower grade of felony than the crime charged and that assault and battery is a misdemeanor, and thus improperly stressed the difference in possible punishment.*

Appeal from Recorder's Court of Detroit, Elvin L. Davenport, J. Submitted Division 1 June 10, 1971, at Detroit. (Docket No. 10329.) Decided October 19, 1971.

Glenn Ray McColor was convicted of assault with intent to do great bodily harm less than murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: LEVIN, P. J., and QUINN and V. J. BRENNAN, JJ.

QUINN, J. The errors relied on by defendant for appellate relief relate to prejudicial argument by the prosecuting attorney in summation to the jury, two instances of improper cross-examination by the prosecuting attorney and error in the jury instructions. None of the errors was preserved by objection at trial, and we are unable to find the "clear in-

justice" required by *People* v. *Qualls* (1968), 9 Mich App 689, to overcome the "no objection—no error" rule.

Affirmed.

V. J. Brennan, J., concurred.

Levin, P. J. (*dissenting*). Although none of the assignments of error were properly preserved for appellate review at the trial level, they should be recognized. The defendant did not have a fair trial.

The defendant was charged with assault with intent to commit the crime of murder MCLA § 750.83 (Stat Ann 1962 Rev § 28.278) and was convicted by a jury of assault with intent to do great bodily harm less than the crime of murder. MCLA § 750.84 (Stat Ann 1962 Rev § 28.279).

The complainant had lived in the defendant's home. They had a falling out and the complainant was asked to leave. The two men met on the street a short time afterwards.

The complainant testified that the defendant struck him and then shot him with a gun, including four shots in the back as he attempted to run away.

The defendant testified that he became dazed when the complainant struck him several times in the head with a gun, a struggle ensued, and shots were fired but that he had no recollection of shooting the victim.

### I.

The defendant's first assignment of error concerns a question that has been litigated many times in our Court in the past few years. He claims it was improper for the prosecutor to ask him on cross-examination why he had not told the police

when he was arrested the version of the facts he gave
on direct examination:

> *"Prosecutor:* Did you ever tell the police after you
> were arrested that you got hit in the head?
> *"Defendant:* No, I didn't tell the officers nothing."

The defendant's silence when arrested was exploited
by the prosecutor in his closing jury argument.[1]

It is axiomatic that an accused person has a con-
stitutional right to remain silent when he is arrested
and faced with accusation, and that his silence may
not be used against him. On that there has been
complete agreement. The areas of disagreement are
(1) whether the same rule applies when the defend-
ant takes the stand, and (2) whether the failure of
defense counsel to object bars the defendant from as-
signing error on this account.

In *People* v. *Rolston* (1971), 31 Mich App 200
(*leave denied,* 385 Mich 760); *People* v. *John Willie
Williams* (1970), 26 Mich App 218; *People* v. *Hicks*
(1970), 22 Mich App 446 (*leave granted,* 384 Mich
754, *subsequently dismissed*); and *People* v. *Seales*
(1969), 16 Mich App 572, we ruled that a defendant
who takes the stand may not be asked on cross-exam-
ination why he did not tell the police at the time of
his arrest the story related at the trial. Similarly,
see *People* v. *Rollins* (1971), 33 Mich App 1 (*leave
denied,* 385 Mich 780). In *People* v. *Calhoun* (1971),
33 Mich App 141;[2] *People* v. *Bell* (1971), 32 Mich

---

[1] In this case the prosecutor argued to the jury during his final
argument:

"The first time we hear this story about him being hit over the
head and being dazed from the evidence that we have here—the first
time the story comes out was on the stand."

[2] In *Calhoun* a panel of our Court referred to *Harris* v. *New York*
(1971), 401 US 222 (91 S Ct 643, 28 L Ed 2d 1), and declared
that: "We read *Harris* to include inconsistent 'nonutterances' as
well as 'utterances'", with the result that when a defendant takes
the stand his silence in the face of accusation can be used against
him.

App 375 (*leave denied*, 385 Mich 769); *People* v. *Graham* (1971), 29 Mich App 528 (*leave granted*, 384 Mich 832),[3] other panels of our Court took a different view of the matter. For reasons fully set out in *Rolston, Williams, Hicks,* and *Seales,* they are, in my opinion, correctly decided.

In *People* v. *Fry* (1969), 17 Mich App 229, we recognized that the tacit admission argument is impermissible, and that a failure to object does not necessarily preclude a defendant from raising the question on appeal.[4] In *United States* v. *Brinson* (CA

The lawyer for the defendant in this case argued that if *Calhoun* is a correct interpretation of the law it is now necessary to amend the required *Miranda* warning to read: "However, if you choose to remain silent your silence may be used against you if you decide to take the stand". To continue to give the *Miranda* warning without that qualification, not so to inform the defendant, would be to misrepresent the significance of his remaining silent.

The practical effect of *Calhoun* is that an accused person must decide when he is arrested, without hesitation and without the advice of counsel, whether he will testify at the time of trial. Even if a lawyer were present when he was arrested, the lawyer would have to be omniscient to decide at that time, without consultation with his client, whether the client should take the stand at the time of trial.

In *Harris* the defendant gave a statement; he did not exercise his privilege to remain silent. At stake in *Harris* was the enforcement of the *Miranda* warnings requirement. It was thought that the failure to give the *Miranda* warnings was not of such importance as to require suppression of a statement actually and voluntarily given.

The issue here concerns the protection of the constitutional right to remain silent. Also at stake is the Fourteenth Amendment right to take the stand. *Harris* concerns the *Miranda* warnings. The rights with which we are concerned existed before *Miranda*. The difficulties experienced in the enforcement of the *Miranda* requirements should not be seized upon to erode rights existent before *Miranda*.

[3] Affirmed on the ground that a police officer's rebuttal testimony that the defendant had told the officer that he had "nothing to say" was admissible to impeach the defendant's testimony that he had attempted to tell police officers his side of the story. The Court added significantly: "In our holding today, we stress that the defendant's refusal to speak during interrogation is admissible only to impeach his own inconsistent statements at trial". *People* v. *Graham* (1971), 386 Mich 452, 458. Compare *People* v. *John Willie Williams* (1970), 26 Mich App 218, 226, fn 10.

[4] In *Fry,* we concluded that because of the other evidence against

6, 1969), 411 F2d 1057, and *United States* v. *Nolan* (CA 10, 1969), 416 F2d 588, 594, the United States Courts of Appeals for the Sixth and Tenth Circuits ruled that asking a defendant on cross-examination why he did not tell the story he related at the trial to the FBI (*Brinson*) and arguing to the jury that his failure to do so was a tacit admission of guilt (*Nolan*) were plain error requiring reversal even though the issue had not been properly preserved by objection at the trial level.

In the present case, resolution of the disputed factual issues turned on the jury's assessment of the credibility of the two protagonists, the complainant and the defendant McColor. In such a case the prosecutor's violation of the defendant's constitutional right cannot properly be regarded as harmless.[5] Pertinent are the observations of our Court in *People* v. *Hicks* (1970), 22 Mich App 446, 452:

"Juries composed of ordinary laymen not trained in the law tend to associate the exercise of the Fifth Amendment privilege with guilt rather than possible innocence and exposure to ambiguous compromising situations. While we cannot affirmatively say that every jury would so react, we cannot speculate that it would not."

## II.

The prosecutor's closing argument transgressed in many respects long established limitations. The statement that, "From the evidence in this case, I sincerely say that I believe it was a proper charge, and the person who was charged, namely, Glenn Mc-Color, is guilty", violates the rule which precludes

---

the defendant the violation of his constitutional right was harmless beyond a reasonable doubt.

[5] *Cf. People* v. *Rolston, supra,* pp 207, 208, fn 12.

a prosecutor from expressing a personal opinion concerning the guilt of the accused.[6]

It was also improper to suggest to the jury that it show its "sincerity" by convicting the defendant.[7]

Nor ought we to countenance the prosecutor's suggestion, by the following statements, that the defendant was a member of the criminal class:

"It is no strange thing for people out there to have guns, and perhaps this is the whole problem now. It seems like the criminals have all the guns * * * there are too many bad guys out there with guns. * * *

"Counsel says that the defendant has no record. Therefore, we should believe him. Don't you know that every man up there in Jackson prison was at one time in court for his first time? *Maybe this is just the first time that Mr. McColor has ever been caught.*"[8] (Emphasis supplied.)

Recently in *People* v. *Montevecchio* (1971), 32 Mich App 163, we reversed a conviction because the prosecutor had "characterized the defendant as a professional criminal whose friends perjured them-

---

[6] ABA Project on Standards for Criminal Justice, Standards relating to the prosecution function, 5.8(b), p 128. See *People* v. *Quick* (1885), 58 Mich 321, 324; *People* v. *McGuire* (1891), 89 Mich 64; *People* v. *Hill* (1932), 258 Mich 79, 88; *People* v. *Ignofo* (1946), 315 Mich 626, 636; *People* v. *Slater* (1970), 21 Mich App 561, 565; *People* v. *Humphreys* (1970), 24 Mich App 411, 418.

[7] The prosecutor argued to the jury:

"I hope that your experiences here will not let you fall into the same trap that many of your citizens do. They read the papers and conclude that the court system is wrong. We have got criminals out in the street because the court system is wrong. It is the sincerity with which you decide the facts in this case, if we have proven to you these facts beyond a reasonable doubt."

[8] *Cf. People* v. *Ignofo, supra*, where the prosecutor argued:

"Joe Neuff [an alias of the defendant] killed that man. He has been slick enough and smooth enough to get away with it a number of years. Oh, yes, but there is the record and it has caught up with him."

The Supreme Court ruled this was reversible error even though there was no objection or request for a cautionary instruction.

selves in testifying as to defendant's alibi" even though the issue had not been preserved for review at the trial level.

In this connection it should be noted that "it is * * * the duty of the court * * * to check and control any intemperance of zeal or language that is not warranted by the facts and circumstances shown by the proofs". *People* v. *Aikin* (1887), 66 Mich 460, 480.[9]

It was also improper, in this trial for assault with intent to murder, to introduce an extraneous sideshow in the following manner:

"I wanted to see if there was truth and him [the defendant] to explain to us in the presence of his wife about Sandra Brown, the young lady he was with on the 15th, the portion of the 16th, and arrested with on the 17th. You heard that, and that goes to the credibility." [The shooting occurred on the 16th; Sandra Brown was not with the defendant at that time.]

The prosecutor should stick to the pertinent facts and should not seek to convict the defendant through innuendo and character assassination.[10]

## III.

This next assignment of error shows the extent to which the prosecutor strayed from his proper role and the extent he was permitted to do so.

The defendant's father and wife, who testified concerning the altercation that resulted in the complainant being asked to leave the defendant's home

---

[9] Similarly, see *People* v. *Carr* (1887), 64 Mich 702, 708; *People* v. *Camel* (1968), 11 Mich App 219, 222; *People* v. *Brocato* (1969), 17 Mich App 277, 305; *People* v. *Plautz* (1970), 28 Mich App 621, 623.

[10] See *People* v. *Griffen* (1971), 36 Mich App 368, LEVIN, P. J., dissenting.

and who were not present at the scene of the shooting and had no personal knowledge of the facts surrounding it, were asked on cross-examination by the prosecutor:

Of the defendant's father: "Would you shoot me in the back?"

"You think that would be wrong?"

"Even if I say that I am going to kill you the next time I see you, would you shoot me in the back?"

Of the defendant's wife: "If I took the gun that John had and told you that I was going to kill you, but I didn't, and a week after that would you shoot me in the back?"

"Do you believe it is wrong to shoot people in the back?"

The prosecutor may not establish norms of conduct in that fashion. It is entirely beside the point whether the defendant's father or wife or the defendant himself[11] would shoot the prosecutor in the back. The issue was whether the defendant acted properly at the scene of the assault: whether he assaulted the victim, or whether the victim assaulted him; and whether the defendant acted criminally in the matter.

## IV.

The jury was charged by the judge concerning included offenses. After the members of the jury had been deliberating for 20 minutes they returned to the courtroom and the following occurred:

"*The Foreman:* The question is the difference between assault and battery and felonious assault.

"*The Court:* All right. Felonious assault is any person who shall assault another with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or

---

[11] The defendant was asked on cross-examination, "Would you shoot me in the back?"

other dangerous weapon. Now, any object that is not enumerated, you have to find out whether it was dangerous or not, meaning that those we have enumerated are deemed to be dangerous in themselves. That is, by other dangerous weapons, but without intending to commit the crime of assault with intent to do murder, and without intending to commit the crime of assault with intent to do great bodily harm, shall be guilty of a felony. Assault and battery is any person who shall be convicted of an assault or an assault and battery where no other punishment is prescribed shall be guilty of a *misdemeanor. I cannot mention punishment in any one of these.* The grades are as follows: Assault with intent to commit murder. Under that is assault with intent to do great bodily harm less than murder. Felonious assault, where neither exists, that is to say, there is no intent to commit felonious assault, an assault with intent to murder or assault with intent to do great bodily harm. It is an assault with any one of the weapons or any one of the dangerous weapons and is a felony. *Assault and battery is a misdemeanor.* Is that clear enough now? (Emphasis supplied.)
    *The Foreman:* Yes."

I am satisfied that the tendency of the judge's response was to emphasize unduly that felonious assault was a lower grade of felony than the felony charged in the information, and that assault and battery was a misdemeanor. Even the merest tyro knows that the punishment for a misdemeanor is significantly less than for a felony. The trial judge should not have stressed the difference in the possible punishment.