PEOPLE v SMALL

Opinion of the Court

1. Arrest—Felonies—Probable Cause.

An arresting officer must possess facts which establish probable cause that an individual has committed a felony, not mere vague and general suspicions.

2. Arrest—Felonies—Probable Cause.

An arresting officer makes his determination of probable cause not as a legal scholar determines the existence of consideration in support of a promise but as a man of reasonable prudence and caution would determine whether the person arrested has committed a felony.

3. Searches and Seizures—Automobiles—Arrest—Parameters of Search.

It is well within the parameters of a proper search incident to a lawful arrest to search an open automobile trunk which is within the reach of a defendant when he is arrested.

4. Appeal and Error—Prosecutors—Improper Remarks—Prejudicial Effect—Timely Objections—Cautionary Instructions.

Reversal based upon improper prosecutorial comments is precluded unless the prejudicial effect is so great that it cannot be cured by timely objection and a cautionary instruction.

5. Appeal and Error—Criminal Law—Miscarriage of Justice—Statutes.

No judgment or verdict shall be set aside or reversed or a new

References for Points in Headnotes

[1, 2] 5 Am Jur 2d, Arrest § 44.
[3] 5 Am Jur 2d, Arrest § 43.
   68 Am Jur 2d, Searches and Seizures § 96.
[4] 75 Am Jur 2d, Trial § 906.
[5] 5 Am Jur 2d, Appeal and Error § 702.
[6–9, 11, 12] 5 Am Jur 2d, Arrest §§ 26, 28.
[10] 21 Am Jur 2d, Criminal Law § 5.
[13, 15] 29 Am Jur 2d, Evidence § 638 et seq.
[14] 75 Am Jur 2d, Trial § 166.

trial granted by any court of this state in a criminal case on the ground of error in pleading or procedure, unless in the opinion of the court after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice (MCLA 769.26; MSA 28.1096).

DISSENT BY M. F. CAVANAGH, J.

6. ARREST—ARREST WITHOUT WARRANT—POLICE OFFICERS—REASONABLE CAUSE.

*A police officer is empowered to make an arrest without a warrant upon reasonable cause to believe a felony has been committed and reasonable cause to believe that the person arrested has committed that felony.*

7. ARREST—CONSTITUTIONAL LAW—POLICE OFFICER'S KNOWLEDGE—FUNCTION OF COURT.

*It is the function of a court to determine whether the facts available to officers at the moment of the arrest would warrant a man of reasonable caution in the belief that an offense has been committed where the constitutional validity of an arrest is challenged.*

8. ARREST—REASONABLE CAUSE—HEARSAY—POLICE OFFICERS.

*It is entirely proper for police to use hearsay as part of the facts available to them to decide whether there are reasonable grounds for an arrest.*

9. ARREST—PROBABLE CAUSE—SUFFICIENCY—INFORMATION SUBSEQUENTLY GAINED.

*The factual sufficiency for probable cause is measured at the moment a person is arrested, and information gained subsequent to the arrest may not be used to support the information known by the arresting officer at the time of the arrest.*

10. CRIMINAL LAW—ASSOCIATION WITH CRIMINALS—PERSONAL FAULT.

*Mere association with a criminal does not satisfy the individualistic determination of personal fault which our criminal justice system requires.*

11. SEARCHES AND SEIZURES—SEARCH WITHOUT A WARRANT—AUTOMOBILES—BURDEN OF PROOF—PROBABLE CAUSE—EXIGENT CIRCUMSTANCES.

*The burden rests on the people to demonstrate that police possessed probable cause, acted in a reasonable manner and in response to exigent circumstances even where under the "auto-*

mobile exception" from search warrants a search warrant is not required.

12. SEARCHES AND SEIZURES—PROBABLE CAUSE—REASONABLE CONCLUSION.

Police must reasonably conclude that the objects sought are located in a particular place in order for there to be probable cause to conduct a search.

13. CRIMINAL LAW—RIGHT TO REMAIN SILENT—PROSECUTOR'S COMMENTS—SILENCE AT ARREST—INCONSISTENT STATEMENTS—IMPEACHMENT.

A defendant's exercise of his constitutional right to remain silent at the time of his arrest precludes prosecutorial questioning and comment concerning nonutterances, and a defendant's refusal to speak during interrogation is admissible only to impeach his own inconsistent statements at trial.

14. APPEAL AND ERROR—CRIMINAL LAW—PROSECUTOR'S COMMENT—NONUTTERANCES—FAILURE TO OBJECT.

A defendant's failure to object to a prosecutor's comment implying that a nonutterance was a tacit admission of guilt does not necessarily preclude reversal.

15. CONSTITUTIONAL LAW—CRIMINAL LAW—SILENCE—RIGHT AGAINST SELF-INCRIMINATION.

The U. S. Constitution protects a criminal defendant from forced self-incrimination and from having the adverse inference of silence used against him (US Const, Am V).

Appeal from Washtenaw, Edward D. Deake, J. Submitted April 10, 1975, at Lansing. (Docket No. 19891.) Decided March 8, 1976.

Steven G. Small was convicted of possession with intent to deliver LSD. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, *Lynwood E. Noah,* Senior Assistant Prosecuting Attorney, for the people.

*Dennis M. Hayes,* for defendant.

Before:  V. J.  Brennan,  P. J.,  and  D. E.  Hol-
brook and M. F. Cavanagh, JJ.

V. J.  Brennan,  P. J.  Defendant Steven Gregory
Small was convicted on March 12, 1974, at a trial
by jury of possession with intent to deliver a
controlled substance [MCLA 335.341(1)(b); MSA
18.1070(41)]. The controlled substance in question
was approximately 33,600 tablets of lysergic acid
diethylamide (LSD). Defendant was sentenced on
April 4, 1974 to from two to seven years in prison.
He appeals as of right from that conviction.

Defendant claims his arrest was not supported
by sufficient probable cause and, therefore, the
search incident thereto was invalid. The record in
this case amply supports a finding that the police
officers had probable cause to arrest when they
took the defendant into custody on June 5, 1973.
The arrest followed an extensive investigation by
the Michigan State Police, during which time
Trooper Larry Harju had made a number of pur-
chases of LSD from one Diane Lynn Stoffer. On
numerous occasions Stoffer had mentioned that
her supplier was a man by the name of "Greg".
Clearly, the police conducted their investigation in
such a manner as to find and arrest this "Greg"
with enough evidence to convict. The investigation
disclosed that on all previous occasions Stoffer had
obtained the LSD from 11380 Roepke Road, a farm
some eight miles distant from Chelsea. On one or
more occasions she had gone to the Roepke Road
farm house to procure LSD for Trooper Harju but
returned without the LSD stating to Trooper
Harju that "Greg" was not there and consequently
she was unable at that time to deliver the drugs.
On at least one occasion the officers observed a
reddish-orange Camaro at 11380 Roepke Road.

Trooper Harju contacted Stoffer on June 5, 1973

and stated that he wanted to buy a large quantity of LSD. Stoffer said that she would have to contact "Greg" to see if that quantity was available. At 11 p.m. that evening, Trooper Harju went to Stoffer's residence and was informed that "Greg" was holding 30,000 pills for him. Trooper Harju paid Stoffer approximately $2,900 in marked currency and Stoffer left her residence at about 11:36 p.m. to meet "Greg" and return with the LSD saying that she would be back at midnight. Police had every reason to believe that Stoffer was on her way to make an immediate "buy". A surveillance team was in constant sight of Stoffer's vehicle except for a period of some five to ten minutes during which time the officers described the route which Stoffer took to be a "cleaning" maneuver designed to avoid and lose any possible surveillance. A member of the surveillance team then spotted Stoffer's car in a parking lot parked next to a Camaro which fit the description of the automobile previously seen by the police at the Roepke Road farm. They then observed Stoffer and defendant emerge from a supermarket carrying bags of groceries, proceed to the trunk of the Camaro and open it. The police officers testified that they then moved in and made an arrest of Steven Gregory Small and Diane Lynn Stoffer at approximately 11:50 p.m.

Defendant says that there are possible innocent explanations which would account for defendant's association with Stoffer that evening, pointing out that the police did not know about the defendant at the time of the arrest, and that for all the police knew, "he was simply a man seen walking out of a grocery store with a woman who was expected to contact a narcotics supplier sometime that evening". We cannot agree with this view of

the facts. We feel the police were more than justified in a reasonable belief that the defendant was the "Greg" that they had been seeking for the past three and one-half months. The courts of this state require that an arresting officer possess facts which establish probable cause that an individual has committed a felony, not merely vague and general suspicions. The facts of this case clearly warranted more than vague and general suspicions by the police. Our Supreme Court has stated that an arresting officer makes his determination of probable cause, "not as a legal scholar determines the existence of consideration in support of a promise, but as a man of reasonable prudence and caution would determine whether the person arrested has committed a felony". *People v Harper*, 365 Mich 494, 501; 113 NW2d 808 (1962).

Since the police lawfully arrested the defendant, we hold that the search of the defendant's trunk which produced the LSD pills was a lawful search incident to an arrest. The defendant had already opened the trunk of the car, and the defendant was standing near the trunk, presumably with the trunk within his reach. Such a search is well within the parameters of proper searches incident to lawful arrests. See *Chimel v California*, 395 US 752; 89 S Ct 2034; 23 L Ed 2d 685 (1969).

Defendant contends further that there was reversible error in the prosecutor's remarks during closing arguments. We disagree. Defendant made no objections to these comments. We will grant that the prosecutor's remarks were improper as measured by the standard set out in *People v Graham*, 386 Mich 452; 192 NW2d 255 (1971), and the statement by my brother Chief Judge LESINSKI in *People v Swan*, 56 Mich App 22; 223 NW2d 346 (1974), which warns against prosecutorial refer-

ence to a defendant's silence. But I do not find that the improper arguments were so prejudicial that they could not have been cured by a timely objection and a cautionary instruction. It is well settled in Michigan that reversal based upon improper prosecutorial comments is precluded unless the prejudicial effect is so great that it cannot be cured by timely objection and a cautionary instruction. See *People v Charles,* 58 Mich App 371, 387; 227 NW2d 348 (1975), and cases cited therein. Defendant is not entitled to a perfect trial, only to a fair one. *Michigan v Tucker,* 417 US 433, 446; 94 S Ct 2357, 2365; 41 L Ed 2d 182, 194 (1974). MCLA 769.26; MSA 28.1096 provides:

"No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case on the ground of * * * error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

This policy has been followed consistently by the Michigan Supreme Court. *People v Howard,* 391 Mich 597; 218 NW2d 20 (1974), *People v Kregger,* 335 Mich 457; 56 NW2d 349 (1953), *People v Cooper,* 328 Mich 159; 43 NW2d 310 (1950), *People v Hawks,* 206 Mich 233; 172 NW 405 (1919). Likewise, this Court has consistently agreed. *People v Keiswetter,* 7 Mich App 334; 151 NW2d 829 (1967), *People v Carr,* 2 Mich App 222; 139 NW2d 329 (1966).

The record shows clearly enough evidence to sustain this conviction.

Affirm.

D. E. Holbrook, J., concurred.

M. F. CAVANAGH, J. *(dissenting)*. I respectfully dissent from my brothers' decision announced today.

The defendant raises four issues for consideration, only three of which need be discussed. The first issue involves the legality of the defendant's arrest. The defendant contends that the police officers at the time of the arrest lacked probable cause to believe that he had committed a felony.

On a number of occasions during the spring of 1973, an undercover narcotics agent, Trooper Larry Harju, had purchased varying amounts of lysergic acid diethylamide (LSD) from a woman named Diane Stoffer, who lived in a trailer court southwest of Ann Arbor. Ms. Stoffer told Officer Harju that her supplier, "Greg", lived on a nearby farm. Police officers followed her on two occasions to a farm at 11380 Roepke Road, north of Chelsea.

On June 5, 1973, Trooper Harju contacted Ms. Stoffer by telephone and stated that he wished to purchase a large amount of LSD. When they met to discuss the arrangements, Stoffer told the officer that she would have to contact "Greg" to see if the amount requested was available. At 11 p.m., Trooper Harju went to Ms. Stoffer's trailer. She said that "Greg" was holding 30,000 pills for him. He paid her approximately $2900 in marked currency, and she left in her car to meet "Greg" and receive the LSD.

A surveillance team of several officers and the prosecutor followed Stoffer as she drove into Ann Arbor. For a short time, five to ten minutes, the police lost track of her, but finally spotted her car parked in a shopping center parking lot. Shortly thereafter the officers observed Ms. Stoffer and the defendant carrying bags of groceries as they exited a supermarket and walked toward the rear of

another car, a Camaro, which was parked next to
Stoffer's. The Camaro fit a general description of
an automobile seen by police officers at the Roepke
Road farm. When one of the two opened the trunk
of the Camaro, the officers arrived and arrested
both Stoffer and the defendant.

Subsequent to the defendant's arrest, the officers
looked into the open trunk of the Camaro. One of
the officers opened a canvas bag, which was situ-
ated in the trunk, and found a large quantity of
tablets which upon analysis proved to be LSD.
Defendant contends as his second issue in this
appeal that this search was unconstitutional and
that the trial court erred in failing to suppress the
pills.

I conclude that the arrest of the defendant was
not based upon probable cause. In this state a
police officer is empowered to make a warrantless
arrest upon reasonable cause to believe a felony
has been committed and reasonable cause to be-
lieve that the person arrested has committed that
felony. *People v Harper,* 365 Mich 494; 113 NW2d
808, *cert den,* 371 US 930; 83 S Ct 302; 9 L Ed 2d
237 (1962). MCLA 764.15(d); MSA 28.874(d).

The United States Supreme Court in *Beck v
Ohio,* 379 US 89, 91; 85 S Ct 223; 13 L Ed 2d 142
(1964), set the judicial standard for reviewing a
claim that arresting officers lacked probable cause
to make an arrest:

"Whether that arrest was constitutionally valid de-
pends in turn upon whether, at the moment the arrest
was made, the officers had probable cause to make it—
whether at that moment the facts and circumstances
within their knowledge and of which they had reason-
ably trustworthy information were sufficient to warrant
a prudent man in believing that the petitioner had
committed or was committing an offense."

Later the Court added:

"When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed." 379 US 89, 96.

Contrary to the defendant's contentions on appeal, it is entirely proper for the police to use hearsay as part of the facts available to them to decide whether there are reasonable grounds for an arrest. A police officer need not determine the admissibility of evidence like a legal scholar before he decides whether there are sufficient grounds to arrest an individual. *People v Harper, supra.*

The existence of probable cause properly depends upon the circumstances confronting the arresting officer. *People v Orlando,* 305 Mich 686, 689; 9 NW2d 893 (1943). A legal principle of crucial importance to this case is that the factual sufficiency for probable cause is measured at the moment a person is arrested; information gained subsequent to the arrest may not be used to support the information known by the arresting officer at the time of the arrest. *People v Charles D Walker,* 385 Mich 565; 189 NW2d 234 (1971). See also *People v White,* 392 Mich 404; 221 NW2d 357 (1974). To allow otherwise would be to enable police confronted with a suspicious individual to effectively bootstrap their way into a valid arrest by seizing him and then searching for evidence of some offense the individual might have committed. If they could find none, the individual would be left with only a highly uncertain civil remedy.

The probable cause standard does not require the impossible of police officers. It merely prohibits

warrantless arrests on a mere general suspicion. *People v Reeves,* 23 Mich App 183; 178 NW2d 115 (1970). This is not a recent innovation. Historically, the courts of this state have required that an arresting officer actually possess facts establishing probable cause that an individual has committed a felony, not merely vague and general suspicions. See *People v Burt,* 51 Mich 199; 16 NW 378 (1883), and *People v Guertins,* 224 Mich 8; 194 NW 561 (1923).

It is important to stress what the police did *not* know about the defendant at the time of the arrest. None of the police officers had ever seen the defendant before they saw him helping Diane Stoffer with some groceries. He fit no physical description of a person whom they were seeking. The police had no evidence which even linked the defendant with the Camaro automobile. He was simply a man seen walking out of a grocery store with a woman who was expected to contact a narcotics supplier sometime that evening. Perhaps most importantly, there had been no observation that any offense involving narcotics had yet occurred between the two.

From these facts I find it difficult to conclude that there were reasonable grounds to believe that any crime had occurred which involved the defendant. Even assuming a felony had occurred, the facts do not amount to probable cause to believe the defendant committed it. He was an unidentified man walking out of a grocery store with a narcotics dealer. For all the police knew at that time, he could have been the store manager or a neighbor. Mere association with a criminal does not satisfy the individualistic determination of personal fault which our criminal justice system requires. *People v Sobczak,* 344 Mich 465, 470; 73 NW2d 921 (1955).

Because of the importance of the issue, I shall proceed to examine the validity of the warrantless auto search. The only exception to the warrant requirement which is applicable to the present facts is the "automobile exception" under which the burden rests on the people to demonstrate that police possessed probable cause, acted in a reasonable manner and in response to exigent circumstances. See *People v Mason,* 22 Mich App 595; 178 NW2d 181 (1970). The search of the orange Camaro automobile must fall for the same reason that the defendant's arrest was illegal—there was no probable cause. In order for there to be probable cause to conduct a search, the police must reasonably conclude that the objects sought are located in a particular place. *People v Franks,* 54 Mich App 729; 221 NW2d 441 (1974).

The fact that the car fit a general description of one parked at the Roepke Road farm is not enough to take this case out of the general suspicion category. There was no evidence to suggest the car was there for an unlawful purpose or indeed that this was the same vehicle. At the time of the search, the police possessed absolutely no information as to the ownership and registration of the vehicle. Finally, there is nothing in the circumstances to suggest that Ms. Stoffer was in the process of consummating a transaction. I conclude that the evidence seized as a result of this illegal search should have been excluded. *People v 7th District Judge,* 55 Mich App 471; 222 NW2d 778 (1974).

The third issue is whether statements made by the prosecutor during closing argument denied the defendant a fair trial. During his closing argument, defense counsel stressed that there was no evidence that the defendant possessed the LSD. As

part of that argument he stated that the defend-
ant did not admit or confess to complicity in the
transaction. Later, during closing argument, the
prosecutor stated:

"Now, Mr. Smith said that it's a circumstantial case
and it is to a great deal other than the fact we have the
defendant right there, but the testimony is uncontra-
dicted and *Mr. Smith made much of the fact that
Steven Gregory Small made no statements to the police,
made no statements ever. There was never any saying
those pills weren't his.*
"In considering the evidence consider the testimony
of two silent witnesses, common sense and human
nature." (Emphasis added).

No objection was made to the prosecutor's re-
marks.

Ordinarily, where no objection is made to the
prosecutor's reference and no curative instruction
is requested, the issue is not properly preserved for
appeal unless a curative instruction could not have
eliminated the prejudice. *People v McLendon,* 51
Mich App 543; 215 NW2d 742 (1974). Also, the fact
that the prosecutor stated that the people's evi-
dence was "uncontradicted" is not improper. *Peo-
ple v Balog,* 56 Mich App 624; 224 NW2d 725
(1974).

However, Chief Justice T. G. Kavanagh in *Peo-
ple v Bobo,* 390 Mich 355; 212 NW2d 190 (1973),
writing for the Michigan Supreme Court estab-
lished the "nonutterance" doctrine. In *Bobo,* the
defendant testified at trial that two potential sus-
pects ran past him from the general area of the
crime just before he was arrested. He did not
testify as to whether statements were made to the
police at the time of his arrest. However, the
prosecutor, over defendant's objection, asked him

on cross-examination if he had told the interrogating police officers about the two men who had run past him. The prosecutor also pointed out the nonutterance during closing argument.

The Court held that the defendant's exercise of his constitutional right to remain silent at the time of his arrest precludes prosecutorial questioning and comment concerning the nonutterance. The Court quoted *People v Graham,* 386 Mich 452, 458; 192 NW2d 255 (1971), which stated:

" 'In our holding today, we stress that the defendant's refusal to speak during interrogation is admissible only to impeach his own inconsistent statements at trial.' " 390 Mich 355, 359.

The crucial question before this Court is whether the differences between *Bobo* and the instant case justify affirmance of the conviction. The prosecutor contends that defense counsel's pointing out the fact that the defendant did not confess complicity "opened the door" on the subject and permitted the prosecutor to reply that the defendant did not deny possession. The defense argument did not justify a comment implying that the nonutterance was a tacit admission of guilt. The *Graham* quote relied upon by *Bobo* indicates that only when the defendant testifies at trial inconsistently with his nonutterance at his arrest or during interrogation is the prosecutor allowed to bring out for impeachment purposes the fact that defendant refused to speak. In this case the defendant did not take the stand. The defense's closing argument was not in any way inconsistent with the defendant's nonutterance.

Second, it is argued that defendant's nonobjection precludes review of the issue. It is true that a timely objection was made in *Bobo.* That case,

however, endorsed the analysis of Judge [now Justice] LEVIN's dissent in *People v McColor,* 36 Mich App 455, 458–465; 194 NW2d 99 (1971). Judge LEVIN concluded that defendant's failure to object to the tacit admission reference did not preclude reversal. See also *United States v Brinson,* 411 F2d 1057 (CA 6, 1969). I agree with that position.

Finally, the question is raised that the equivocal nature of the prosecutor's statement renders it harmless. In *People v Swan,* 56 Mich App 22; 223 NW2d 346 (1974), with Chief Judge LESINSKI writing the opinion, it was held that testimony that defendant remained silent at arrest was harmless error beyond a reasonable doubt. Chief Judge LESINSKI, however, cautioned prosecutors:

"In finding the error harmless in this case, we wish to emphasize that we do not condone conduct which directly or indirectly restricts or penalizes the exercise of the constitutional right to remain silent in the face of accusation. *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973). We will find it difficult in the future to believe that prosecutors and police are ignorant of the well-established principle of law which forbids comment upon an accused's silence or that clear violations of the principle arise from inadvertence. Deliberate violations of this rule may lead us to reverse convictions even where evidence might be overwhelming. The prosecutor who comments, or elicits comment, on a defendant's silence thus risks the loss of a perfectly good case for no reason." 56 Mich App 22, 35.

The present case involves a more egregious error than did *Swan.* In *Swan* the police officer merely testified that the defendant made no statement at arrest. In the present case, unlike *Swan,* the defendant exercised his right not to testify at trial. The prosecutor in his argument went considerably

beyond the defense's statement that no confession was made. The prosecutor argued that the defendant made no statement at all either to police officers or "ever". The jury could have understood this to mean that they should impose an adverse inference from defendant's failure to take the stand.

Even more damning is the statement that there was "never any saying those pills weren't his". The clear implication is that an innocent person would have volunteered to the police the statement that the pills did not belong to him. But the Fifth Amendment protects persons both from having to make such a denial and from having the adverse inference used against him. The prosecutor's statement was so flagrant and prejudicial that nonobjection does not preclude reversal on this ground.

Because of the defendant's illegal arrest, the illegal vehicle search, and the improper remarks by the prosecutor, I would reverse the conviction.